# CHARLESTOWN.

MERCHANTS' AND MECHANICS' BANK OF WHEELING
*v.* EVANS AND DORSEY.

September 9, 1876.

1. A writ is served on only a part of the defendants, the others being returned no inhabitants of the county. The Court may render judgment against those upon whom the writ is served.

2. A declaration against the maker on a promissory note, payable at a particular place, need not aver presentation for payment at the time or place specified.

3. A count in a declaration on a promissory note, alleging that the maker, by his promissory note, promised to pay the plaintiff $6,000 (*meaning, and intending thereby*, $4,000), by reason whereof he became liable to pay $4,000, is bad on general demurrer.

4. Special pleas, which set forth facts, shewing that the plaintiff never had a cause of action, ought, in an action of assumpsit, to be rejected, where a general plea of non-assumpsit has been filed.

5. Special pleas, setting forth matters in discharge of the action, ought to be permitted to be filed, where the plea of non-assumpsit has been filed; but if the case is decided on a demurrer to evidence, the Appellate Court would not reverse the court below for rejecting such pleas, as such defences may be given in evidence under non-assumpsit.

6. Usury may be given in evidence under the plea of non-assumpsit.

7. The defendant ought to be compelled to join in a demurrer to evidence, when the burden of proof is upon him, unless the case is clearly against the plaintiff, or the court doubts what facts should reasonably be inferred from the evidence.

8. If a party, who ought not to be compelled to join in a demurrer to evidence, do so voluntarily, he can make no objection thereto in the Appellate Courts.

1876.
August Term.

M. & M. Bank
Wheeling
v.
Evans & Dorsey.

9. On the common counts for money loaned, in an action of assumpsit, the plaintiff may recover of all the makers of a promissory note, though the money for which the note was given, was received by one of them only, and the others were sureties.

10. A joint note, signed by several parties, for $6,000, is presented to a bank for discount by the principal in the note; they discount it for $4,000 only, and the cashier endorsed it "discounted for $4,000 only, and should be so read." This was done without the knowledge of the sureties in the note. They are, nevertheless, bound, the transaction being equivalent to a discounting of the note for $6,000 and a repayment by the principal of $2,000 thereon.

11. There is no usury in such transaction.

12. Such a note not being paid at maturity, general deposits made by the principal in the note, after its maturity, cannot, without his direction so to apply them, be regarded as payments on this note.

13. Indulgence given by the bank to the principal in such note, without the consent of the sureties, will not release the sureties, unless the bank had entered into an agreement, whereby it bound itself legally to grant such indulgence.

14. A partial payment cannot be allowed against a debt, unless described in a plea or in an account filed with the plea. And if no such plea and no account of payments are filed, though evidence, which might tend to prove a partial payment, be inadvertantly admitted, without objection, still such partial payments ought not to be allowed.

15. On a demurrer to evidence, the judgment is for the plaintiff, the appellate court will not reverse such judgment, merely because the court did not sustain a demurrer to a defective count in the declaration, if all the evidence on the demurrer to evidence would have been properly received on other good counts in the declaration.

*Supersedeas* to a judgment of the circuit court of the county of Monongalia, rendered on the twenty-ninth day of March, 1875, in a suit therein then pending, in which the Merchants' and Mechanics' Bank of Wheeling was plaintiff, and James Evans, Benjamin M. Dorsey, and others, were defendants.

The *supersedeas* was granted on the petition of said James Evans and B. M. Dorsey, plaintiffs in error.

The facts of the case appear in the opinion of this Court.

Hon. C. S. Lewis, judge of said circuit court, presided at the hearing below.

1876.
August Term.

M & M. Bank,
Wheeling
v.
Evans & Dorsey.

P. H. *Keck* and C. *Boggess*, for plaintiffs in error.

N. *Goff, jr.*, and D. *Lamb*, for defendant in error.

GREEN, JUDGE :

The plaintiff brought an action of assumpsit on July twentieth, 1868, in the circuit court of Monongalia county, against James Evans, Benjamin M. Dorsey, George D. Evans, and Evans D. Fogle, survivors of themselves and A. C. Dorsey, E. P. Fitch, and Philip Rogers deceased, based upon a promissory note given by said seven parties, payable to the plaintiff at its office in Clarksburg, for $6,000, forty days after its date, and dated August twenty-eighth, 1861. The demurrer to the evidence shows the following to be the facts. The note duly executed by all the makers, was taken to the banking house of the plaintiff by one of the parties to it, A. C. Dorsey. The plaintiff discounted the note for $4,000 only, and the cashier of the bank endorsed upon it at the time, "discounted for $4,000, and should be so read." No notice thereof was given to the appellants, James Evans, and Benj. M. Dorsey. It was understood by the plaintiff, that the proceeds of the note was for the use of George D. Evans, and after abating the interest at the rate of six per cent per annum for the forty days, the balance $3,973.33, was deposited to the credit of George D. Evans, with whom an account was then opened on the books of the bank.

The bank at once paid $2,000 to A. C. Dorsey on the check of George D. Evans, and credited it on his account. The entire balance was paid on his checks prior to September 18th, 1861. Shortly after the $6,000 note was discounted thus by the bank, its cashier was informed that the proceeds of this note was for the use of Evans and Battell, a firm which had been formed a short time prior thereto, but whether this information

was given to the bank prior to September 18, does not appear; when it was given, the account on the books of the bank was changed in its heading from Evans to Evans & Battell, and thereafter all sums standing to their credit, was paid out on the checks of Evans & Battell. On September eighteenth, 1861, George D. Evans, or Evans & Battell, made a general deposit in the bank of $207.45, and three days thereafter, borrowed of the bank $1,000 on an endorsed note, the proceeds of which, $993.83, was credited on said account. This $1,000 was checked out October tenth, 1861; so that when the said $6,000 note became due, said two sums of $207.45, and $993.83, the proceeds of said $1,000, note were standing on the books of the bank to the credit of George D. Evans, or of Evans & Battell.

On October 31, 1861, $2,500 was paid on the check of Evans & Battell, which was considerably more than the balance, then standing on the books of that bank to their credit. And thereafter their account was always· overchecked, except for a single day. On December 30, they deposited with the bank a New York draft for $22,950, and on the same day their checks were paid to the amount of $7,585.30; leaving in the bank on that day to their credit $4,837.01, which was more than checked out the next day. The firm of Evans & Battell · on their open account, remained in debt to the bank always thereafter; their indebtedness increasing till the· close of their account on September 30, 1862, when they owed the bank on their open account $3,868.85; the firm was shortly thereafter dissolved, it having become insolvent. The appellants were never notified, either that this $6,000 never had been discounted for $4,000, or that it was not paid, when it fell due, nor was any demand made upon them by the plaintiff till March 6, 1868, when Nathan Goff, the President of·the bank, wrote to James Evans, one of the appellees, stating that George D. Evans had filed his petition in bankruptcy, and that he, James Evans, had better be doing some-

thing with this note; suggesting that he had better take it up and file it in the bankruptcy case. He states in this letter that "he had thought that he, George D. Evans, would get his claims allowed him, so that this note would have been paid out of them, but they were nearly all rejected, so says J. H. Hoffman." The claims here referred to, amounted to $47,000 on account of cattle, sold to the United States Government, by Evans & Battell. James Evans had been in the bank frequently, but had never been called upon to pay this note, or notified of its non-payment till this letter was written, though it was the habit of the bank to notify the parties to a note of its non-payment at maturity. James Evans also testified, that after this suit was instituted, he had a conversation with Nathan Goff, the president of the bank. In this conversation, Goff stated that Battell had been to see him twice, asking time upon their indebtedness, including this note, until they could collect their claims upon the government. The claims referred to in this conversation, were other claims of Evans & Battell against the United States government, and were in the hands of John H. Hoffman, for collection. Battell received something on them. The plaintiff in this suit got from them some twenty-two or twenty-three hundred dollars, after this letter of Goff's was written, but no part of the $4,000 lent on this $6,000 note, has ever been paid, unless the facts above stated amount to a payment.

A. C. Dorsey, E. P. Fitch, and Philip Rogers died insolvent, before the institution of the suit. The writ was issued against the survivors of the makers of said note, James Evans, Benjamin M. Dorsey, George D. Evans, and Evans D. Fogle. It was executed only on James Evans and Benjamin M. Dorsey, and returned as to the others, "George D. Evans and Evans D. Fogle, not found, and no inhabitants of my county; and said Evans D. Fogle is a non resident of the State of West Virginia."

48

The declaration was filed against all four of the survivors. At the September term, 1868, James Evans and Benjamin M. Dorsey, appeared and plead non assumpsit, and issue was joined. On March 12, 1874, on motion of the plaintiff, the Court ordered that the suit be abated as to George D. Evans and Evans D. Fogle; but on another day of the same term, this order was set aside.

The first and second counts in the declaration are the ordinary counts in assumpsit, on the $6,000 note, the only difference between them being that the second count states that the note was presented for payment, at maturity, at the office of the plaintiff, in Clarksburg, which the first count omits. The third count is also a special count on this note, which is therein described as "a promise to pay the further sum of six thousand dollars (meaning and intending, thereby $4,000), whereby the makers became liable to pay $4,000. The other counts were the common money counts, for money lent, money paid for the use of the makers of the note, and money found due from them, on an account stated. The bill of particulars is for $6,000 due on the note, also for $4,000 due on this note, stating, that on its face it read $6,000, but was intended to mean $4,000; also for $4,000, lent. To this declaration and each count thereof, a demurrer was filed. The demurrer was overruled. The defendants then offered to file nine special pleas; in the first and third of which they deny that they executed and delivered the notes described in the several counts of the declaration, and in the fifth and eighth they allege that (Evans and Dorsey were, or) George D. Evans was, the principal debtor, and the other parties to said note, were the sureties, a fact well known to the plaintiff, and that (Evans and Dorsey, or) George D. Evans paid, on general deposit, to said plaintiff, in said bank, after said note became payable, a much larger sum of money than the said (Evans and Dorsey were, or) Geo. D. Evans was indebted to said bank, by reason of said

note ; by reason of which general deposit, and payment, the said note became, and was, satisfied, and discharged. !· The second special plea was the plea of usury. All concluded to the country, and though objected to, were permitted to be filed. They offered, as their fourth special plea, a plea that this note was made to be discounted by the plaintiff for $6,000, but the plaintiff refused to discount the same, whereby, it became null and void; and, also, as their sixth, seventh, and ninth special pleas, three pleas alleging that the principal in said note, George D. Evans, gave an order on John H. Hoffman, claim agent, for the amount due said plaintiff (or Evans & Battell gave such order.) And, in consideration thereof, the said plaintiff agreed to indulge the said principal, George D. Evans, and to bring no suit on said note, by means of which indulgence, given without the consent of the defendants, the sureties in said note, they were discharged and released from the payment of said note. These four pleas all concluded to the country, and were rejected by the Court.

The plaintiff joined issue on those pleas, which were received by the Court; and on these issues the jury found a verdict for the defendants, which, upon the motion of the plaintiff, the Court set aside, and granted a new trial ; to which action of the Court the defendants did not except ; upon the second trial the plaintiff demurred to the evidence ; and all the evidence introduced by the defendants, as well as the plaintiff, was set forth. in the demurrer to evidence, and is, substantially,. as above stated. The defendants joined in the demurrer.. The jury assessed the plaintiff's damages at $7,226, with interest from the date of said verdict, March 18, 1875, it being $4,000 with interest from October 7, 1861. The count reciting that, " it seems to the Court that the matter shown in evidence to the jury, is not sufficient, in law, to maintain the issue, on the part of the defendants," rendered judgment for the plaintiff for $7,226,.

with interest from March 18, 1875, as assessed by the jury, and costs.

From this judgment, a writ of *supersedeas* was awarded the defendants, James Evans, and Benjamin M. Dorsey.

The Court did not err in permitting the declaration to be filed against George D. Evans and Evans D. Fogle, who were returned, no inhabitants of the county, by the sheriff, and in entering up judgment against the other two surviving defendants, who were served with process. Section forty-nine of chapter one hundred and seventy-nine of the Code of Virginia of 1849, re-enacted by the Code of W. Va., of 1868, section fifty-two, chapter one hundred and twenty-five, expressly authorizes such a judgment, under such circumstances, and fully justifies the Court, in not compelling the plaintiff to mature the cause against George D. Evans or Evans D. Fogle, and in permitting the jury to be sworn, to try the cause against the two defendants, on whom the process was served.

The Court, properly overruled the defendants' demurrer to each count of the declaration, except the third.

The first count omits to state that the note was presented, at the plaintiff's office, in Clarksburg, for payment at maturity. But by the Code of Virginia, of 1849, ch. 144, sec. 1, re-enacted in Code of West Va. of 1868, ch. 99, sec. 1, it is provided, that it shall not be necessary to aver, or prove, presentation for payment, at the time, or place, specified in a note, in order to recover of the makers.

The third count is, apparently, sustained by the decision of the Supreme Court of New York, in *Douglass & Dunn v. Wilkinson*, 17 Wend. 431. In this case it was decided, that when an accommodation note is drawn for $2,500, and the payee declines to indorse it for the whole amount, but agreed to do so for a less amount, and writes

to the cashier of the bank, where it is payable, a direc-

tion thereon, to pay upon it $750; such note, in a suit
against the indorser, the payee, is, in legal effect, a note
for $750, and may, accordingly, be declared upon as a
note for that sum.    All the common money counts, as in
the present case, were also inserted in this declaration.
The jury having rendered a verdict for the plaintiff, the
supreme court of New York held, that the verdict ought
not to be set aside, but was sustained by the special count,
declaring on the note, as though it had been drawn for
$750.

And, on appeal, the court of errors of New York, 22
Wend: 559, affirmed this decision by a divided court,
seventeen for affirmance, and six for reversal; the chan-
cellor giving it as his opinion, that the plaintiffs could
not recover, on this special count, declaring on this note
as a note for $750, but that they were entitled to recover
under the money count.    But the Supreme Court of the
United States, in *Page, admrs. v. Bank of Alexandria*, 7
Wheat. 35, and the court of appeals of Virginia, in *Bank
of U. S. v. Jackson, admx.* and *Bank of Metropolis v. same*,
9 Leigh. 221, held, that in a suit against the indorser of an
accommodation note, no recovery can be had under the
common money counts against an indorser.    We concur
with the chancellor of New York, in his opinion, so far
as he held, that no recovery could be had on the special
count, setting forth the note as if drawn for a different
amount from the amount specified on its face.    The cir-
cuit court should, thereupon, have sustained the demurrer
to the third count.

The circuit court committed no error in rejecting any
of the defendant's special pleas.    The fourth special
plea, setting forth, that the note was made by the makers
thereof, to be discounted by the plaintiff for $6,000,
which they refused to do, whereby the note became
void, if it set forth any defence, obviously set forth a
defence which amounted to nothing more than the gen-
eral issue of non assumpsit, which had been plead, and

1876.
August Term.

M. & M. Bank,
Wheeling
v.
Evans & Dorsey.

it was, therefore, properly, rejected. This plea, also, concluded to the country, when it should have concluded with a verification. The sixth and ninth special pleas were, also, properly, rejected. These pleas set forth that, in point of fact, the defendants were but sureties in the note sued on, and this was well known to the plaintiff, and that he, in consideration of an assignment to it of certain claims, by the party who was, in point of fact, the principal in said note, agreed to grant indulgence to the principal, after the said note matured, without the consent of the principal. There is some doubt whether, when, as in this case, all of the obligors in a contract, whether under seal or not, appear upon the face of the contract, as co-obligors and principals, the sureties can, in a court of law, set up the defence which these pleas present, and prove, by parol, that some of the obligors, in point of fact, were but sureties. (See *Bull v. Allen et al.* 19 Con. 101; *Ward v. Johnson,* 6 Munf. 6; *Steptoe's admrs. v. Harvey's exors.* 7 Leigh. 501). But it is unnecessary to determine this question, in this case, as both these pleas, improperly, concluded to the country, and were, therefore, properly, rejected. For one or more of the reasons, already assigned, the circuit court might have properly rejected all the other special pleas of the defendants.

All of these special pleas, which set forth facts, showing that the plaintiff never had a cause of action, ought to have been rejected, as amounting to the general issue; and such of them as set forth matters in discharge of the action, if they had concluded properly, might have been received by the court, but if they had, nevertheless, been rejected, this Court would not have reversed the circuit court on the appeal of the defendants, as no injury could have possibly resulted to them, as the case was, finally, decided on a demurrer to the evidence; and all their defences were admissible under this general issue. *Porter v. Harris,* 4 Call. 488; *Levy v. Gadsby,* 3 Cranch. 186. Two of these special pleas, which were received by the

court, ought to have been rejected, because they pre-sented no defence to the plaintiff's action. They set up, substantially, as a defence, that after the maturity of the note, George D. Evans, the principal, paid, on general deposit, in the bank, sums of money to a larger amount than the amount due on said note, whereby, it is alleged, said note was discharged. Such general deposits are not alleged to have been in the bank when the suit was in-stituted; had they been, the defendants might have plead them as offsets, but they never could have relied upon them as payments upon the note. A party who makes a general deposit in a bank, thereby imposes on the bank the obligation, after paying any balance on the open ac-count on the bank's books, to pay out the balance on the check of the depositor, and it cannot, without the consent of the depositor, be applied as a payment upon a note due from the depositor, and others, which they may owe the bank. If, however, the bank refuses to pay it out on the check of the depositor, and suit is in-stituted therefor against the bank, it would have a right to plead, as an offset in such suit, the note which the de-positor, if principal in the note, owed the bank. We must assume that the court properly granted a new trial to the plaintiff, as no bill of exception was taken by the de-fendants to this action of the court.

The appellants assign, as an error, that they ought not to have been compelled to join in the demurrer to the evidence. The record does not shew that they were so compelled; on the contrary, they appear to have volun-tarily joined therein. They cannot, therefore, make this objection in the Appellate Court. See *Childers v. Deane & Page,* 4 Rand. 406. This objection, even if made in the cir-cuit court, could not have availed in this case. The court ought not to compel a joinder in demurrer, when the case is clearly against the party demurring, (*Hoyle v. Young,* 1 Wash. 150), or when the court doubts what facts should reasonably be inferred from the evidence. *Trout v. Va. & Tenn. Railroad Co.,* 23 Gratt. 640. With

these exceptions, the general rule is, a party has a right to demur to the evidence. This case falls under the general rule, and not under either of the exceptions. The demurrer to the evidence, shewing that it was admitted that the note was signed by all the parties, whose names were attached thereto, the entire burden of proof was on the defendants, and the plaintiff had a right to demur to the evidence, unless he came within one of the exceptions to the general rule. The court properly rendered judgment for the plaintiff, on the demurrer to the evidence, as the evidence supported the plaintiff's action, either under the two first special counts in the declaration, or under the general money counts. The original transaction, in its legal effect, amounted to a loan of $6,000 to all the makers of the note, and a payment thereon, forthwith, of $2,000, which, in effect, was credited at the time upon the note by the endorsement, which the cashier at once made upon it. The cases of *Page v. The Bank of Alexandria*, 7 Wheat 35, and *The Bank of the United States v. Jackson, admr.*, 9 Leigh 221, decide that, upon the common count for money lent, a recovery cannot be had against an endorser of accommodation paper, because, in no sense, has money been lent to him. The money, in such case, is loaned to the maker of the note, and the obligation of the endorser is not direct, but is collateral and conditional, and he can, therefore, in such case, be only held liable on a special count setting forth his special contract. But where the security is not an endorser, but one of the makers, of the note, the case is very different: the obligation is then direct and positive, and the money should be regarded as loaned to all of the makers of the note, who are all equally bound, and in like manner. The fact that it is thus borrowed, for the use of one of the makers of the note, or for a stranger, can have no effect on the obligation of the parties. It is but the loaning of money to one party, and, by his direction, paying it to another, in which case no doubt can be entertained that it could be recov-

ered of the party borrowing, as money lent. The fact that four thousand dollars only, instead of six thousand dollars, was loaned, without the consent of some of the makers of the note, who were sureties, does not vitiate the note; for the party, who received the money, had he received in cash the $6,000, would have had a perfect right, without the consent of his sureties, to have paid back at once $2,000 to the bank. And the transaction, in its legal effect, amounts to this: The bank was under no legal obligation to have notified the makers of the non-payment of the note, at maturity, and its failure to do so, cannot, therefore, prejudice its rights. The evidence fails to shew that the bank ever entered into any agreement, whereby it bound itself, legally, to grant indulgence to the principal; and, without such binding agreement, the sureties could not be released, either in law or equity, by the mere indulgence of the bank. White & Tudor's Lending Cases in Equity, Vol. 2, p. 917, note to *Rees v. Berrington*. Nor does the evidence shew any loss resulting from the plaintiff's neglect in realizing any collaterals put in its hands.

The plea of usury is also unsustained by the evidence. The transaction cannot be regarded as a loan ot $3,973.33, and a taking therefor of a note of $6,000, with the intent of enforcing the payment of the whole of the $6,000; for the cashier, at the time of the loan, endorsed on this note what was equivalent to a credit of $2,000. The amount received of the bank was $3,973.33, and the amount claimed by the bank, before, and at the time of, the institution of the suit, as shewn by the declaration, when fairly interpreted, was this sum, with legal interest thereon, at the rate of six per cent. per annum. We have already seen that the general deposits, made by Evans, or by Evans & Battell, did not amount to payments on the note sued upon. The bank was under no obligation to the securities in this note to refuse to pay the checks of Evans, or Evans & Battell, thus violating its own contract, in order that, if the occasion should

49

ever arise, these securities might have an offset against their note. This we consider the effect of a general deposit, when there is no special understanding, either expressed or implied, from the circumstances attending the deposit. Such deposit must be regarded as applicable, first, to the payment of the open account against the depositor on the books of the bank, and the balance to be paid out on the checks of the depositor. But the understanding between the parties, implied by the law, would be violated by an application of this balance as a payment upon the joint note of the depositor, as principal, and others, as securities, to the bank, unless such application was directed by the depositor. The facts, certified as proven in this case, shew that, so far from such direction being given, either expressly or by implication, that on the occasion of the deposit of the New York draft of $22,950, which it is claimed should have been applied to the payment in full of the note on which the appellants were security, it was understood that the bank was to pay it out on the checks of Evans & Battell which they would draw very soon. A large portion of it was, accordingly, checked for the same day it was deposited, and the balance, the next day. It would probably have all been paid down in cash if the bank had had that much cash on hand. A portion of it was not paid till the next day, because the bank had to borrow the money to make the full payment. Evans & Battell had a right to have their New York draft cashed, and the fact that the bank, not having the full amount of cash to pay for the draft, paid therefor, by placing the amount thereof to the credit of Evans & Battell, subject to their check, at any time, could not have the effect of placing the bank under obligation to refuse to apply the money it had borrowed for that purpose, to the payment of the balance due on their purchase of the draft, and requiring them to apply it to the note held by them. Such an application, on the part of the bank, would have been a

breach of good faith, which the sureties of the note can not complain that the bank did not commit.

We have considered all the grounds of error, assigned by the appellants, or insisted on by their counsel, in argument. There is, however, shown by the evidence, a state of facts which might seem to indicate that the defendants were, perhaps, entitled to a credit of the amount which was received by the bank, upon the claim of Battell & Evans, on the Government, stated by Evans to be about $2,200 or $2,300, probably, but which was, in point of fact, $2,062.20. But if the facts, really, established that this payment should be applied to the note, it can not be so applied, under the pleadings, in this case. Section four, chapter one hundred and seventy-two of Code of Virginia, of 1860, in force when this suit was brought, and still in force. Code of West Virginia, chapter one hundred and twenty-six, section four, provides, that the defendants may, at the trial, have allowed, against a debt, any payment, which is so described in their plea, or so described in an account, filed with their plea, as to give the plaintiff notice of its nature, but not otherwise. None of the pleas here so describe this payment of $2,062.20, or describe it in any manner, nor is there any account, filed with any of their pleas, so describing it; it can not, therefore, be allowed, even if the facts had shown such payment to have been made. An imperfect statement of such a payment might, perhaps, have been aided, by its being proven, without objection. (See Bell v. Crawford, 8 Gratt. 110). But in this case, there was no account of payment and no substitute therefor, of any sort, and no plea, in any manner, referring to this payment, though other payments were described in pleas filed. The wisdom of this provision of the Code, and the necessity of its enforcement, is well illustrated in this case. The defendants filed numerous special pleas, setting up, apparently, all their defences, and every supposed error of the circuit court has been assigned, by the appellants, in their petition

for *supersedeas*, or in the argument of the counsel in this court, yet no plea refers, in any way, to this credit; its omission is not assigned as error, and the appellants' counsel have not, in their argument, complained of such omission. It is, therefore, highly probable, that had this credit been described, in the plea, or an account, so as to give the plaintiff notice of the nature thereof, evidence would have been introduced to explain the transaction, and show that what might seem to be a payment, on this note, was really no payment thereon; that such explanation might have been made, is more likely, as the cashier of the bank, who probably knew all about the matter, was examined before the jury. No question, however, on this subject, was asked him. The statement, that the bank had received, between $2,200 and $3,300, from the claim on the government, was made by George D. Evans, but no question was asked him how it was to be applied. The whole case indicates, that this sum was not claimed, as the credit upon the note, and that it was, probably, understood to be a credit on the balance of the open account due, from Evans & Battell. All that the record shows is, that it was received by the bank from the goverment claim, and that the open account of Evans & Battell, was closed on the books of the bank, as of date, September 30, 1862, by a balance of $4,868.88 on the credit side, as due to the bank, and that there is put, without date, on the credit side, but not in the column of credits, these figures ($2,062.20.) These figures, in all probability, were intended as this credit, for though differing somewhat in amount, yet Evans' statement shows, that his recollection of the amount was vague. If a proper account had been filed, and this vague entry on the bank books would not be regarded as an application of the credit, the question would then have arisen, how it should be applied by the court, a question which would have been difficult to answer. Story, in his equity jurisprudence, Vol. 1, Sec. 45, 9 d, states that the authorities are conflicting, but he thinks that the doc-

trine of the Roman Law, on this subject, ought to be
held as the true doctrine of our courts, and Pother lays
down, that by the Roman Law, the application by the
court of payments, should be made to the debt for which
the debtor has given sureties, rather than to those he
owes singly, for in discharging it, the debtor discharges
himself from two creditors ; from his principal creditor,
and from his surety, whom he is obliged to indemnify,
and the debtor's interest is to be first consulted.    But
Greenleaf, in his work on Evidence, vol. 2, part 4, sec.
534, states that a debt, secured by a surety, has no pre-
ference in the appropriation of payments.  In *Smith v.
Lloyd,* 11 Leigh 517, Judge Allen, after reviewing the
decisions of the Supreme Court of the United States,
gives as their result, that if neither party makes the
application of payments, the law will adjust it, by its own
notions of the equity and justice of the particular case ;
and, in the absence of express Virginia authority, he
inclined to the opinion that the position taken by the
Supreme Court was, upon the whole, the best, and that
no general rule, applicable to every case, could be adopt-
ed, and adhered to, without producing great hardships.
The Supreme Court of the United States, in *Field v.
Holland,* 6 Cranch 27, said, that " if the application is
made by neither party, it becomes the duty of the court,
and, in its exercise, a sound discretion is to be exercised.
It cannot be conceded that this application is to be made
in a manner most advantageous to the debtor.   If neither
party avails himself of his power, and it devolves on the
court, it would seem reasonable that an equitable appli-
cation should be made.   And it being equitable that the
whole debt should be made, it cannot be inequitable to
extinguish first those debts for which the security is
most precarious."  But we need not determine, on the
facts appearing in this record, whether this credit should
be applied to the open account or note, as it has not been
claimed in this case, in such a manner as that it can be
allowed as a credit to the defendants.

The error of the court, in overruling the third count in the declaration, resulted in no injury to the appellants, as the evidence entitles the plaintiff, on other counts in the declaration, to a judgment for his whole debt; and no evidence was received, under this third count, which might not properly have been received under other counts in the declaration.

The judgment of the circuit court must be affirmed, with costs and damages, according to law.

Moore and Edmiston, Judges, concurred.

Haymond, Judge, absent.

JUDGMENT AFFIRMED.