1878.
Special Term.

DOUGLASS *v.* CENTRAL LAND CO.

(Absent, MOORE, JUDGE).

Decided March 30, 1878.

1. The plea of payment, whether in *assumpsit*, debt, or covenant, should in this State conclude to the country.

2. Though an issue be not made up on a special plea, yet if the evidence to sustain it was admissible under the general issue and *non assumpsit* had been pleaded, the court ought not to reverse a judgment on a verdict for such irregularity, when all the evidence is certified, and sustains the verdict.

3. Upon such pleadings, though all the evidence had not been certified, yet if the plea be such that the plaintiff could reply no special matter without a departure from the allegations of his declaration, but could only take issue on the plea, the non-joinder will be cured by the statute of jeofails, after verdict.

4. The record states that the "jury were sworn according to law." The case is tried, a verdict responsive to the issues rendered, and a, new trial asked and refused, but no objection is made in the court below, that the jury had not been properly sworn; such objection cannot, under such circumstances, be made for the first time in the Appellate Court; but it must be presumed that the jury was properly sworn.

*Supersedeas* allowed upon the petition of the Central Land Company of West Virginia, to a judgment of the circuit court of Cabell county, rendered on the 12th day of June, 1874, in an action at law in said court then pending, wherein H. T. Douglass was plaintiff, and the said Central Land Company of West Virginia, was defendant.

The Hon. Evermont Ward, Judge of the ninth judicial circuit, rendered the judgment below.

*Wm. A. Quarrier*, for plaintiff in error.

*Smith & Knight*, for defendant in error.

GREEN, PRESIDENT, furnishes the following statement of the case :

H. T. Douglass brought his action of *assumpsit*, in the circuit court of Cabell county, against the Central Land Company of West Virginia. At November rules, 1872, he filed his declaration, which consisted of the common counts for work and labor, for goods sold and delivered, for money lent, for money had and received to and for the use of the plaintiff, and upon an account stated, and concluded : " Yet the said defendant, not regarding his said promises and undertakings, has not paid the said several sums of money, or any part thereof to the said plaintiff, &c., to the damage of the plaintiff, $1,500.00."

At the December term of the court, the defendant pleaded *non assumpsit*, with leave entered of record to both parties to give any special matter in evidence ; to which plea the plaintiff replied generally. Subsequently at the June term, 1873, the defendant again pleaded *non assumpsit*, and also pleaded payment ; and without further pleading on either side, at the June term, 1874, the jury was sworn, as the record states, " in the manner required by law," who rendered a verdict for the plaintiff, and assessed his damages at $1,000.00 which verdict the defendant moved the court to set aside and grant him a new trial because the said verdict was contrary to the law and the evidence and also because the same was without evidence, which motion the court overruled and rendered a judgment in accordance with the verdict. This judgment is brought before this Court for review on a writ of error. The plaintiff excepted to the action

of the court in overruling his motion and entering up this judgment. His bill of exceptions contains all the evidence in the case. Whitcomb, the chief engineer of the Chesapeake and Ohio Railroad Company proves that he employed the plaintiff as a division engineer of the Chesapeake & Ohio R. R. Co., and he testifies that when he employed him as such engineer he said to him, "that I expected him to do what Col. Ruper had been doing and he (Col. Ruper) superintended the work of the Central Improvement Company, but the witness told him that he had nothing to do with that company." It was proved that after that, which was in March, 1871, the plaintiff for more than a year acted as the superintendent of the Central Land Company in laying out and having built the town of Huntington, doing for them a large amount of business, his services for them being worth at least $1,000.00. During this time it was also proved that he was also in the employ of the Chesapeake and Ohio Railroad Company as a division engineer, at a salary of $250.00 per month. That the services rendered by him for the Central Land Company did not interfere with the duties he owed the Chesapeake and Ohio Railroad Company, those duties being performed in an entirely satisfactory manner. In the performance of his duties as superintendent of the Central Land Company, he received his orders and directions not from Whitcomb the chief engineer of the Chesapeake and Ohio Railroad Company, but from officers of the Central Land Company, residing in New York. Several engineers living in Huntington who were in the employment of the Chesapeake and Ohio Railroad Company, also did work for the Central Land Company, and on one occasion the bookkeeper of the Chesapeake and Ohio Railroad Company, in the presence of the plaintiff, asked the president of the Chesapeake and Ohio Railroad Company how he was to charge the services of these resident engineers. He told him to make out the estimates for all services in the name of the Chesapeake

and Ohio Railroad Company, and then endorse on these estimates the portion or part thereof incurred for the benefit of the Central Land Company, so that that company might be charged on the books of the Chesapeake and Ohio Railroad Company. And the bookkeeper who succeeded him proved that in making out the estimates and pay rolls he endorsed on them the amount to be charged for the time occupied by these resident engineers of the railroad company in work for the Central Land Company; but he never did make any such endorsement for the services performed by the plaintiff for the Central Land Company. Some months after these services had ceased to be rendered, and about two weeks before the institution of this suit a Mr. Tracy, who was the treasurer of both companies, as the treasurer of the Central Land Company, paid over to himself as the treasurer of the Chesapeake and Ohio Railroad Company $1,000.00 which was the estimate of the value of the services rendered by the plaintiff for the defendant, and it was so charged upon the books ; no authority to make this paymeent was proven. This is a brief but fair statement of all the evidence in the case as certified by the court.

GREEN, PRESIDENT, delivered the opinion of the Court :

The defendant's counsel insists that the court erred in rendering judgment in this case, because no issue was made on the plea of *non assumpsit*, the defendant did not put himself upon the country ; nor did the plaintiff do the like. There is nothing in this assignment of error. The record states, that on December 12, 1872, the defendant pleaded " *non assumpsit*," to which the plaintiff replied generally. The only conclusion to such a plea is to the country. It is both unusual and unnecessary for the record to show that this plea was formally written out. The issue on this plea was made up as

formally as is either usual or necessary. It is true, the defendant on June 10, 1873, again pleaded *non assumpsit*, to which the record does not state that the defendant replied. This was no error, both because the issue had been already formally made up on this same plea, and because our statute expressly declares, that in such a plea the *similiter* need not be put in. Code of W. Va., chapter 125, section 25, page 603.

The next assignment of error is, " that the plaintiff did not file any replication to the petitioner's plea of payment, which is an affirmative plea." It is not necessary in every case to file a replication to every affirmative plea. Whether a replication be, or be not necessary, depends not upon whether the plea be affirmative or negative, but upon whether it concludes to the country or not. As a general rule, an affirmative plea concludes with a verification, because it generally brings forward new facts confessing those stated in the declaration and avoiding them by pleading these new facts; but sometimes it is necessary in order that the pleading may be good, that the pleader should insert in his declaration, or plea, a negative allegation, which, because it is negative, he is not bound upon the trial to prove, but the burden of proving the opposite is upon his opponent. If in any particular case, such a negative allegation is required to make a plea good, such plea should conclude neither to the country nor with a verification; but the replication to such plea though it allege affirmative matter must conclude to the country. For though the facts stated in such replication are affirmative, still they are not new, but are alleged simply in direct denial of the negative allegation required to be stated in the plea. So if a necessary negative allegation is made in the declaration, the plea alleging affirmative matter in direct denial of such necessary allegation should, though an affirmative plea, conclude to the country; though on the trial of the issue the burden of proving it will be in such case on the defendant. Thus in the case of *Brodenham et*

*al.* v. *Hill,* 7 M. & W. 274, the defendant in an action of *assumpsit* for work and labor, pleaded *non assumpsit* within six years or the statute of limitations omitting the verification, and it was held on a special demurrer, that this plea was good. The court in rendering this decision, said that the plea of the statute of limitations had by the general practice in modern times been concluded with a verification, but the ancient and better authorities showed that it was entirely unnecessary, and the good sense of the matter was that a party ought not to be required to verify what it does not lie upon him to prove. And in *Wilkes* v. *Hopkins & Nichols,* 6 M. & G., it was decided in an action of *assumpsit* on a declaration based on the non-performance of a promise to pay a bill, a plea that the defendant duly paid the bill, should conclude to the country and not with a verification. It is obvious that on the trial of an issue on this plea, the burden of proving payment would be on the defendant, for an affirmative contract to pay money being proven, it is incumbent on the defendant to prove payment. *McGregory* v. *Prescott,* 5 Cush. 67 ; and *Van Gieson* v. *Van Gieson, &c.,* 12 Barb. 520. Nevertheless it was unnecessary and improper to conclude this plea of payment with a verification, for as the declaration had necessarily alleged non-payment of the bill, the plea which alleged the payment of the bill was a simple traverse or denial of a necessary allegation in the declaration, and should therefore have concluded to the country. And the court so held, and as an illustration of this principle, Tindal, C. J., in the progress of the case says: "So in an action for a breach of covenant to repair, a plea that the defendant did repair is affirmative, but it concludes to the country." And the reporter in a foot note adds, that a plea that the defendant did not break his covenant concludes to the country.

It is true that if an unnecessary allegation, whether it be affirmative or negative is made in the declaration, a plea denying such unnecessary affirmative allegation,

1878.
Special Term.

Douglass
v.
Central Land
Co.

or affirming facts in denial of such unnecessary negative allegation, ought not to conclude to the country. No unnecessary allegation in a declaration whether allegation be positive or negative can be traversed.

Thus in *Goodchild* v. *Pledge*, 1 M. & W. 362, in an action of debt for goods sold and delivered, the plea alleged that when the debt became due he paid the same, concluding to the country, and the court held upon a special demurrer, that the plea should have concluded with a verification, because it was unnecessary to allege the non-payment in an action of debt. The allegation of non-payment in an action of debt being mere form and not traversable, while in an action of *assumpsit* such allegation is necessary. This distinction we will presently see has not been sustained in Virginia, but the allegation of non-payment is regarded as necessary both in *assumpsit* and debt. Had they so held, the plea of payment concluding to the country would have been held good in *Goodchild* v. *Pledge*. In the case of *Ensall* v. *Smith*, 1 C. M. & R. 522, to a declaration on promises to pay on request, the defendant pleaded he has paid, concluding to the country; a special demurrer was sustained by the court, who held that the plea should have concluded with a verification. The case is distinguished from *Wilkes* v. *Hopkins & Nichols*, C. M. & G. 4; E. C. L. 36, in this that the plea then was, that the defendant did duly pay the bill when due, which the court held was direct denial of the necessary allegation in the declaration, that the bill was not paid when it fell due. In *Ensall* v. *Smith*, the plea was, that the defendant has paid the debt, and as it was unnecessary for the declaration to allege more than, that the bill was not paid when due, that the plea amounted to more than the denial of a necessary allegation in the declaration and brought forward new matter, the payment of the debt after it became due, and therefore it should have concluded with a verification. In Virginia as we shall presently see, it is held that an allegation, that a debt was not paid when it became due, would

1878.
Special Term.

Douglass
v.
Central Land
Co.

be insufficient to sustain a declaration either in *assumpsit* or debt, but on the other hand, in either of these forms the declaration must allege non-payment of the debt generally, including its non-payment at any time after it fell due. Had this been recognized to be the English law, the court in *Ensall* v. *Smith*, would have held that the general plea of non-payment ought to have concluded to the country, as then it would have been a direct denial of a necessary allegation in the declaration. Park, B., said in that case: "The declaration states, that the defendant did not pay on request," meaning thereby that this was all of the allegation that was material in the declaration. But in Virginia, such an allegation would have been insufficient. The allegation there was, that "he had not paid the money;" but so much of this allegation as alleged the non-payment after the debt became due, was regarded as surplusage and not traversable. But in Virginia, no part of this allegation under our decisions, could be regarded as surplusage, and hence the whole of this allegation might be traversed, and the general plea of payment traversing the whole of this allegation ought to conclude to the country. In the old editions of Chitty's Pleadings, the forms of a plea of payment, whether *solvit ad diem* or *solvit post diem*, conclude with a verification. See Chitty's Pl., 6 Amer. from 4th London ed., vol. 3, p. 974 and 975. But his form of a plea of payment in an action of covenant concludes to the country. 3 Chit. Pl., same edition 1001. And this form was approved by the Court of Appeals of Kentucky in *Clarkson* v. *White*, 3 B. Mon. p. 376. But the court there held that, though a plea of payment improperly concluded with a verification, and no replication was filed to the plea, yet after verdict and judgment, the court would not reverse the case for this irregularity. In Virginia there have been two decisions on the question, how a plea of payment should conclude, which can not be reconciled with each other.

In *Henderson* v. *Southal, &c.*, 4 Call 372, the court were

1878.
Special Term.

Douglass
v.
Central Land
Co.

unanimously of opinion, that the plea of payment was responsive to the negative of non-payment in the declaration, and should therefore conclude to the country. On the contrary, in the case of *Nadenboush* v. *McRae*, Gilm., the court held that a general replication to a plea of payment did not constitute an issue, and a *similiter* to such plea entered in the office against the plaintiff's consent by the clerk ought therefore to be set aside. This decision is based on the idea that a plea of payment should conclude with a verification. In rendering it the court did not refer to the unanimous decision of the court in 4 Call, which they indirectly reversed, probably because 4 Call had not been then published. So that these two decisions may each be regarded as original decisions entirely independent of each other. And we must determine which of then lays down the law correctly. From what we have said it appears that the proper conclusion of a plea of payment must logically depend upon what allegations of non-payment, if any, were necessary in the declaration. If a general allegation of non-payment covering not only non-payment when the debt became due, but also non-payment since the debt became due must be alleged in the declaration, a general plea of payment which expressly denies this general allegation of non-payment, must necessarily conclude to the country. But if no allegation of non-payment need be made, or if the allegation of non-payment in the declaration may properly be confined to the time when the debt became payable, then the general plea of non-payment should conclude with a verification, alleging as it would a new fact not necessarily negatived in the declaration. A long train of Virginia decisions has settled beyond controversy that in that State and in this, in an action for the recovery of a debt, whether it be *assumpsit* or debt, the plaintiff in his declaration must not only allege the non-payment of his debt, but this allegation of non-payment must be general and not confined to the time when

it became due, and must therefore be extended to every person who had a right to receive the payment either at the time it fell due or at any subsequent time. Thus if the suit be on a bond which has been assigned, the allegation must be, that the debt has not been paid to the obligee nor to his assignee. *Braxton's adm'r* v. *Lipscomb*, 2 Munf. 282. If two obligors executed the bond and only one is sued, the declaration must negative the payment by either obligor. *Hill* v. *Harvey*, 2 Munf. 525. If the action is brought by a surviving executor for a debt due from the testator, the declaration must aver non-payment to the testator or to the deceased executor or to the surviving executor. *Buckner et ux.* v. *Mitchell's ex'or*, 2 Munf. 336. So in action for a debt brought by a surviving partner, the allegation must be of non-payment to the two partners during the life of the deceased partner as well as non-payment to the surviving partner. *Nicholson* v. *Dixon's heirs*, 5 Munf. 198. If there be two obligees the averment must be of non-payment to either. *Strange* v. *Floyd*, 9 Gratt. 474. As an original question the necessity of averring in every form of action in the declaration the non-payment of a debt either at the time it fell due or at any time subsequently might well have been questioned. But these numerous decisions settle beyond a controversy that in Virginia and in this State, the declaration, whatever be the form of action, must allege non-payment of the debt generally ; that is so as to include not only when it fell due, but also subsequently. And such being the settled law here we must hold that the general plea of payment denying this necessary general allegation of non-payment in the declaration must in every case, whether the action be *assumpsit*, debt or covenant, conclude to the country.

The counsel for the defendant refers to *Lockbridge* v. *Carlisle*, 6 Rand. 20, as sustaining his position that there can be no joinder of issue without a replication, when the plea concludes with a verification, and he assumes

1878.
Special Term.

Douglass
v.
Central Land
Co.

that the plea of payment so concludes, because it is an affirmative plea; but he cites no authority to sustain this position, and we have seen that it is unsound, and therefore the authority in 6 Rand. is inapplicable to the case before us. Both the pleas filed, *non assumpsit* and payment properly concluding to the country, the plaintiff had a right, without the formal addition of the *similiter*, to proceed to trial. Code W. Va. chapter 125, section 25, page 603.

The affirming of the action of the circuit court in this case, is however not dependant on the question how a plea of payment should conclude, for as all the evidence in the case is certified by the court below, and made a part of the record, the rejection of the plea of payment, or of any other plea setting up a defense which could have been made under the general issue of *non assumpsit*, or the failure of the court to require an issue to be made up on any such plea, would not in this case be such an error as this Court would correct by reversing the judgment, because such error could not in any manner prejudice the defendant, as the evidence shows that the plaintiff's action was sustained, and no evidence could have been received upon any such special plea, except such as could have been received under the plea of *non assumpsit*. See *Merchants' Bank of Wheeling* v. *Evans & Downey*, 9 W. Va. 373. And even if the evidence had not been spread upon the record, and the plea, on which the issue had not been made up, had properly been concluded with a verification, yet as the plaintiff could not have replied anything to the plea of payment, except what had been alleged in his declaration, and the bill of exceptions shows that an issue had been joined and tried, the blunder in the making of the issues would, though a misjoinder of issue, have been cured after verdict by the statute of jeofails. See *Moore* v. *Mason*, 4 Rand. 488; *Southside Railroad Co.* v. *Daniel*, 20 Gratt. 344; *Simmons* v. *Trumbo*, 9 W. Va. 363. I conclude therefore, that the judgment rendered in this cause, ought

*Syllabus 2.*

*Syllabus 3.*

1878.
Special Term,

Douglass
v.
Central Land
Co.

Syllabus 4.

not to be reversed, because the record fails to show that any replication was filed to the plea of payment.

The next error assigned by the defendant's counsel is, that the record fails to show that the jury were sworn to try the issue, but only states that they were sworn according to law. No objection was made in the court below to the form of the oath. The verdict of the jury was responsive to the issues; the motion for a new trial was not based on any allegation that the jury had not been properly sworn, but on other grounds, and the record does not show that the oath administered was not the proper oath. It is too late to raise this objection in this Court. It must be presumed under the circumstances, that the proper oath was administered. And lastly, the counsel for defendant insists that a new trial ought to have been awarded : First; because there was no evidence to sustain the verdict, that the plaintiff sued on an implied contract; while the defendant's evidence proved that the services performed by the plaintiff were performed upon an express contract. This position is not sustained by the proof. The witness, Whitcomb, states simply that at the time he employed the plaintiff as a division engineer for the Chesapeake & Ohio Railroad Company, he told the plaintiff he expected him to superintend the work of the defendant also. But Whitcomb had no authority to make any contract for the defendant. He had nothing to do with the defendant or its work, and he so expressly told the plaintiff at the time. This is all the evidence in respect to an express contract being made. This does not prove any express contract. There was no impropriety in the plaintiff's declaring on an implied contract. And lastly, it is insisted that on the merits of the case, the verdict ought to have been set aside as contrary to the law and evidence. There was no ground for controversy as to the value of the services rendered by the plaintiff to the defendant; they were clearly worth at least as much as the jury allowed. But it is insisted that the plaintiff's contract with the

Chesapeake & Ohio Railroad Company required him to do not only the work done by him for the Chesapeake & Ohio Railroad Company, but also the work done for the defendant for $250.00 a month, to be paid by the Chesapeake & Ohio Railroad Company; and that the defendant owed this $1,000.00, not to the plaintiff, but to the Chesapeake & Ohio Railroad Company, and paid it to them on October 16, 1872. The jury might perhaps have drawn this conclusion from the evidence; but certainly the evidence did not require this conclusion to be drawn, even if it justified such conclusion. The fact that Whitcomb, when he employed the plaintiff as division engineer, told him expressly that he had nothing to do with the Central Land Company; and the fact that while on the pay-rolls of the Chesapeake and Ohio Railroad Company, made out from time to time and sent to the officers of that company in New York, was endorsed the amount which that company should charge against certain resident engineers at Huntington for work done by them for the defendant, while no such amount was endorsed on these pay-rolls, to be charged by the Chesapeake and Ohio Railroad Company against the defendant for work done for it by the plaintiff, and the fact that nothing was said about the pay-rolls failing to endorse such amount till after the plaintiff had ceased to be in the employment of either company, were certainly strong reasons for the jury's drawing the conclusion that there was no understanding by the parties, that the $250.00 per month to be paid by the Chesapeake and Ohio Railroad Company was intended to pay for his (plaintiff's) work done for them, as also for his work done for the defendant. And if the jury drew this inference, then, of course, the payment made by the defendant to the Cheasapeake and Ohio Railroad Company of $1,000.00 for the services rendered by the plaintiff to the defendant was an unauthorized payment and properly disallowed—for there was no evidence offered that the plaintiff ever authorized the

Chesapeake and Ohio Railroad Company to receive any moneys for him of the defendant, if they really owed him anything. The circuit court therefore did not err in refusing to grant a new trial.

The judgment of the circuit court of June 12, 1874, must therefore be affirmed, and the appellee must recover of the appellant his costs in this Court expended and damages according to law.

JUDGES HAYMOND and JOHNSON concurred.

JUDGMENT AFFIRMED.