# Wheeling.

## FISHER v. THE CITY OF CHARLESTON.

### Decided April 2, 1881.

1: The usual and proper mode of proceeding in this State in cases of *mandamus* is for the plaintiff to file a petition in the court having jurisdiction of the case, setting forth the facts of his case on which he bases his claim to a *mandamus*, and praying for the writ, specifying in his petition the specific act or acts, which he asks to have the defendant commanded to perform. The facts set out in the petition must be such as *prima facie* entitle the plaintiff to the relief he seeks, and the petition should be supported by affidavit, if filed by a private person. On the filing of this petition, which is *ex parte*, the court, if a *prima facie* case is thereby made out, on the plaintiff's motion makes an order, which reciting that the petition is filed orders, that the defendant after being previously served with a copy of the order to appear on a certain day fixed by the court and show cause, if any he can, wherefore a writ of *mandamus* should not be awarded the plaintiff to command the defendant to do the specific acts, which command should correspond with that asked for in the petition. If on the return day of this rule it has been served and the defendant files no answer, the court either orders a peremptory *mandamus* to issue against him or compels him to file an answer, as one or the other may be proper in the particular case. If he files an answer, and it be insufficient at law, the court proceeds, as if no answer had been filed; if it be sufficient in law, no peremptory writ of *mandamus* is then issued, but if the court sees, that there is a disputed question of fact between the parties, it should order an alternative writ of *mandamus* to be issued, and it does not permit a demurrer or replication to be filed to the answer to the rule; or the court may, and usually does, dispense with the issuing a rule to show cause why a *mandamus* should not issue, and immediately on the filing of the petition,

17 595
35 182
36 204
36 299

17 595
37 270

17 595
39 531

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

17 595
45 581

17 595
47 675
47 676

17 595
d50 532

17 595
53 535

17 595
f62 429

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

if a *prima facie* case is thereby made out, orders an alternative writ of *mandamus* to be issued. The alternative writ sets forth by distinct recital and not by reference to the petition all the facts necessary to show the plaintiff's right to the writ of *mandamus* which he asks; and by it the defendant is commanded to perform the particular act specified in it (which should properly be the same as that stated in the rule or petition, but which may be different), or that cause be shown to the contrary in a given time. It is regarded as the plaintiff's declaration. If the defendant does not make a return to this alternative writ, the court may either order a peremptory writ of *mandamus* or enforce the filing of a return, as may be proper in the particular case. The defendant may move to quash the alternative writ, which is equivalent to a demurrer to it, or he may make a return. This return is regarded as his plea; and it may be replied to, and the pleading proceed as in ordinary common law suits, till an issue of law or fact is reached and tried.

2. To the pleadings in cases of *mandamus* the ordinary rules of pleading are applied, neither greater nor less certainty being required in them than in the pleadings in ordinary common law suits. But the facts set forth by the plaintiff in the alternative writ of *mandamus* are set forth by way of recital and not in the positive manner, that is required in an ordinary declaration in a common law suit.

3. The petition and rule constitute no part of the pleadings in cases of *mandamus*; and to these the strict rules of pleading are not applied, it being in all cases sufficient for the petition to set forth a *prima facie* case.

4. A *mandamus* lies in behalf of a judgment-creditor against a municipal corporation, where an execution has been issued on the judgment, and it has been returned "no property found."

5. In such a case no demand on the proper municipal authorities to levy a special tax to pay such judgment is necessary as preliminary to the right of the creditor to apply to the court for a *mandamus*.

6. In such a case it is not necessary in the petition, that the plaintiff should expressly allege, that this judgment, on which such execution has been so returned, has not been paid; but such non-payment must be alleged in the alternative writ, as it is regarded as a declaration, and in this State such non-payment must be allleged in every declaration.

7. As by the general law of this State the taxing power of a municipal corporation, such as a town, is in its common council, and it is composed of the mayor, recorder and councilmen, it is therefore unnecessary in such a case of *mandamus* either in the petition or in the alternative writ of *mandamus*, that it should be alleged, that the taxing-power is in said parties.

8. Such a judgment-creditor has a right to require the council of a city to levy a tax sufficient to pay his judgment and to specifically appropriate such tax to its payment, but the obligation of the city is sufficiently met by a tax specifically appropriated to the payment of such judgment-creditor and other specified creditors, if the tax be sufficient to pay them all.

9. By sufficient to pay them is meant, sufficient to, pay them *promptly* at the time the tax-payers are required by law to pay such taxes. The judgment-creditors; for whom such specific tax has been levied, are not bound to wait till the city can make the taxes out of delinquent tax-payers. But if, when the tax ought to be paid by law, a sufficient amount has not been collected to pay in full such judgment-creditors, it is the duty of the common council forthwith to levy another and a sufficient tax; for in law such previous tax would be regarded as insufficient.

10. Except by the consent of parties and the assent of the court entered of record it is improper to substitute the petition and rule or either of them in lieu of the alternative writ; and no issue should be made upon an answer to the rule. If it be done, and such issue be tried, and judgment be rendered on it in the court, such judgment and proceedings will be reversed and annulled by this court for such irregularity.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Kanawha rendered on the 17th day of December, 1879, in an action in said court then pending, wherein Henry I. Fisher was plaintiff and the City of Charleston was defendant, allowed upon the petition of said Fisher.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

On May 29, 1878, Henry I. Fisher presented his petition to the circuit court of Kanawha county for a *mandamus* against the city of Charleston. The petition set forth, that since May 1, 1871, the city of Charleston had been and still was a municipal corporation duly chartered and organized; that on November 24, 1876, the petitioner obtained a judgment in the circuit court

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

of said county against said city of Charleston for $744.80 with interest thereon till paid and costs of suit ; that an execution was issued on said judgment returnable to March rules, 1877, which execution was returned "no property found ;" and that the petitioner knows of no property of the city of Charleston out of which said judgment can be made. The petition asks for a rule against certain persons named, the mayor, the treasurer, the recorder, and councilmen of said city, returnable on June 6, 1878, to show cause, if any they could, why a writ of *mandamus* should not be issued commanding the treasurer to pay over to the petitioner any money in his hands otherwise unappropriated not exceeding the amount of said judgment, interest and costs ; and for want of said funds, commanding said mayor, recorder, and councilmen forthwith to levy a tax upon the taxable property within the corporate limits of the city of Charleston sufficient to satisfy said judgment, interest and costs, and to set aside the proceeds of said tax for the payment of the same, and to pay over said proceeds to the petitioner. In this petition it is recited, that said mayor, recorder and councilmen constituted the corporation of the city of Charleston. This petition was sworn to by the petitioner.

Upon the filing of this petition on motion of the petitioner the court ordered, that the said mayor, treasurer, recorder and councilmen, naming them, after being previously served with a copy of this order should appear in court on the 6th day of June during the then term of the court and show cause, if any they could, wherefore a writ of *mandamus* should not be awarded the petitioner to command the said treasurer to pay over to him any money in his hands otherwise unappropriated sufficient to pay this judgment of $744.80 with interest thereon from November 25, 1876, and $11.40 costs of suit ; and for want of such funds commanding the said mayor, recorder and councilmen, forthwith to levy a tax upon the taxable property within the corporate limits of the city

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

of Charleston sufficient to satisfy said judgment, interest and costs, and to set apart the proceeds of said tax for the payment of the same, and to pay over said proceeds to the petitioner.

On June 3, 1878, a copy of this order was served on each of the said councilmen and on the mayor, treasurer and recorder of the city of Charleston; and on the return day, June 6, 1878, they all appeared and moved the court to quash this rule, which motion the court overruled; and on June 24, 1878, they filed their answer to said rule, in which they said, that no such writ of *mandamus* should issue against them, because, they said, that heretofore, to wit, on the 24th day of November, 1876, the mayor, recorder, and councilmen of said city of Charleston did levy a tax upon the taxable property within the corporate limits of said city of Charleston sufficient to satisfy the said judgment, interest and costs, and did set apart the proceeds of said tax for the payment of said judgment, interest and costs. And for further answer they said, that no such writ of *mandamus* should issue, because the said city of Charleston had made to the said Fisher on said judgment, interest and costs sundry payments, specifying them particularly; all of which the respondents alleged they were ready to verify, and they therefore prayed the judgment of the court, whether or not said writ of *mandamus* should or ought to be issued. This answer was verified by affidavit. To this answer and each part thereof the plaintiff demurred. The court overruled the demurrer; and the plaintiff replied generally.

Before this demurrer was filed the plaintiff had suggested, that since the proceedings had been instituted, another election of officers and councilmen of the city of Charleston had taken place, and on the motion of the plaintiff sustained by affidavit it was ordered, that the proceedings then and thereafter should be prosecuted against those then representing the city of Charleston, the names of the then mayor, recorder and councilmen

1881
Spring
Special Term.
Fisher
v.
The City of
Charleston.

being specified. The answer had been filed by the former councilmen, mayor and recorder, and no notice of the revival of the proceedings in the name of the new officers was served on them. On the same day that the order was made reviving the cause in the name of the new officers, a motion was made by the plaintiff for a peremptory writ of *mandamus,* which the court overruled, and the plaintiff took a bill of exceptions. The plaintiff then asked leave of the court to amend the rule issued in this case by inserting therein the word "special" before the phrase "tax upon the taxable property, &c.," so that the *mandamus* asked for instead of commanding the mayor, recorder and councilmen to levy a tax upon the taxable property, &c., would command them to levy a special tax on the taxable property &c. The defendants objected to this amendment, but the court overruled the objection and allowed the amendment to be made, and the defendants then excepted thereto and moved the court to quash the rule as amended, which motion the court overruled.

At the next term of the court on December 17, 1879, the plaintiffs tendered a special replication to the answer of the defendants, to which the defendants objected, and the court sustained the objection and refused to permit such special replication to be filed; and the plaintiff took a bill of exceptions to this action of the court. This special replication alleged, that the levy of the tax made by the defendants on the 24th day of November, 1876, was not a special or specific levy for the purpose of paying the judgment of the plaintiff against the city of Charleston, but if any such levy was made as set up in the defendant's return to the rule, it was a general levy, made for the purpose of paying the plaintiff's claim and a large number of other claims against the said city of Charleston, and the plaintiff averred that if any such general levy was made, the fund arising therefrom had long since been used for other claims than the claim of the plaintiff.

A jury was sworn to try the issue on the general replication, who found a special verdict. They found the facts stated in the affidavit of the plaintiff, on which the rule was issued, except that they found the date of the plaintiff's judgment to be November 26, 1876. They found further, that the mayor, recorder and councilmen of the city of Charleston on the 24th of November, 1876, took the proceedings and made the levy set out in the certified abstract from the records of their proceedings filed with the verdict, and that the plaintiff's claim was included and provided for in the $1,000.00 set apart to him in said levy; that the said city of Charleston had made the partial payments to the plaintiff named in their return to the rule; and that they had made no other levy for the plaintiff's judgment; that this levy was made without the plaintiff's knowledge but with the knowledge of and after consultation with his attorneys but not on their application. On this verdict being rendered the plaintiff moved the court for a peremptory *mandamus*, but his motion was overruled; and on the special verdict the court being of opinion, that the law was for the defendants, and that the plaintiff was not entitled to a peremptory *mandamus*, dismissed the petition and rule in this case, and gave judgment for the defendant for its costs.

The proceedings of the council of the city of Charleston referred to in said special verdict was a report of a committee made November 24, 1876, showing that there was in the hands of the city sergeant of uncollected taxes $31,666.22 and that there were incidental expenses of the city to be provided for amounting to $19,300.00; and the committee recommended, that the said uncollected taxes to the amount of $19,300.00 be set off and and apart to pay these estimated expenses, and that the balance, $12,366.22, be subject to the future order of the council on the general indebtedness of the city; and they further reported, that a capitation tax of $2.00 per capita and a levy of $1.25 on each $100.00 together with

76

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

fines, wharfages and licenses would raise within a year $27,274.27; and they recommended that this capitation tax and levy be made, and that the said $27,274.27 as well as said balance of $12,366.22, be set aside for the sole benefit of the creditors of the city, and that among the general creditors of the city specially provided for in this levy to be made was a claim of the plaintiff, Fisher, of about $1,000.00 and nine other specified claims against the city, amounting with this $1,000.00 to $23,250.00.

The following resolution was passed by the council—based on said report: "*Resolved,* That the special report of the finance committee this day submitted to the council be adopted and spread upon the record, and a tax of $2.00 be imposed on each capitation assessed in the city for the year 1876, and that a levy of $1.25 on each $100.00 valuation of the taxable property real and personal of the city be imposed for the year 1876 for the specific purpose recommended in the special report admitted to record."

During the trial of the case the defendant offered to read a copy of these proceedings of the common council of the city of Charleston, and the plaintiff objected to its being read, but the court overruled the objection and permitted it to go to the jury, and the plaintiff took a bill of exceptions to this action of the court. After all the evidence had been heard by the jury, but before the verdict of the jury was rendered, the plaintiff tendered two other special replications to the answer of the defendant, but they were objected to by the defendant, and the court refused to permit them to be filed, and the plaintiff took a bill of exceptions to this action of the court.

The first of these replications was, that the levy of taxes made by the defendant on November 24, 1876, if any such was made, was a general levy made for the purpose of paying the plaintiff's claim and a large number of other claims against the city of Charleston and was

not a special levy to pay the plaintiff's said judgment. The other special replication was, that if any such levy was made, the funds arising from such levy had long since been used for and applied to other purposes than the payment of the plaintiff's judgment, and that no part thereof remains for the satisfaction of said judgment.

On the jury which tried the case were four jurors who were citizens and resident tax-payers of the city of Charleston, which jurors the plaintiff moved the court to exclude and not allow them to be sworn on the jury in this case, but the court overruled this motion and permitted said jurors to sit in this case, to which action of the court the plaintiff obtained a bill of exceptions.

This Court allowed a writ of error and *supersedeas* to the judgment of the circuit court dismissing his petition and rule and awarding to the defendant its costs and holding that the plaintiff was not entitled to a peremptory *mandamus*.

*A. Burlew*, for plaintiff in error, cited the following authorities:

7 Wall. 315; Moses on Mandamus 214, and cases cited.

*Smith* and *Knight*, for defendant in error, cited the following authorities:

High Ex. L. Rem. §§ 520, 521, 522; *Id.* §§ 465, 481; *Id.* §§ 461, 463, 467; *Id.* § 41; 7 Wall. 315; 7 Vt. 169; 30 Mo. 166; 15 W. Va. 115.

GREEN, PRESIDENT, announced the opinion of the Court:

Originally a *mandamus* was a mandate issued directly by the King of England to his subject, ordering the performance of some specified act. It was in no sense a judicial writ. Such mandates have long since become obsolete. Any such mandate was called originally a *mandamus*; but gradually a mandate ceased to be called

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

a *mandamus*, and this name was applied to a judicial writ issued by the King's Bench in the name of the King. In this court the King originally sat in person, and when he ceased to do so, yet by a fiction of the law he was still presumed to be present. At first these writs were issued by the King's Bench only in cases in which the King or the public at large was interested, and for these reasons this writ was called a prerogative writ and was regarded as not issued of strict right but only at the will of the sovereign. But in modern times even in England there is a tendency to treat this writ as a writ of right, and to strip it of its prerogative character. In this country it has lost its prerogative nature and is regarded very much as a writ of right and in the nature of an ordinary suit between parties, when the aggrieved party shows himself entitled to this kind of relief. See *Gilman* v. *Bassnett*, 33 Conn. 298; *Asberry* v. *Beavers*, 6 Tex. 457; *Commonwealth* v. *Dennison*, 24 How. 66.

It is true, that some of the courts in this country still appear to regard this writ as prerogative in its character. See *People* v. *Board of Metropolitian Police*, 26 N. Y. 316. This appears especially to be the case in Illinois. See *Inspectors of Peoria* v. *The People*, 20 Ill. 530; *People* v. *Hatch*, 33 Ill. 134-140; *City of Ottawa* v. *The People*, 48 Ill. 240. But the weight of American authorities is decidedly opposed to these views, and we may regard what Chief Justice Taney said in *The Commonwealth of Kentucky* v. *Dennison, Governor, &c.,* 24 How. 97, on this point as correctly stating the law. He says:

" It is well settled, that a *mandamus* in modern practice is nothing more than an action at law between the parties, and is not now regarded as a prerogative writ. It undoubtedly came into use by virtue of the prerogative powers of the English crown and was subject to regulations and rules, which have long since been disused. But the right to the writ and the power to issue it has ceased to depend upon any prerogatiye power, and

it is now regarded as an ordinary process in cases, to which it is applicable. It was so held by this court in the cases of *Kendall* v. *United States*, 12 Pet. 615; *Kendall* v. *Stokes et al.*, 3 How. 100."

1881
Spring
Special Term.

Fisher
v.
TheCity of
Charleston.

The use of this writ as a judicial writ issued by the King's Bench may be traced to the early part of the fourteenth century, but it was rarely used till the latter part of the seventeenth century. See *Middleton's Case*, ½ Dyer, 3½2 b. temp. 16 Elz.; *Bogg's Case*, 11 Coke 93; *Powers, J.*, in *Queen* v. *Heathcote*, 10 Mod. 48; *Dr. Widdington's Case*, 1 Lev. part I, 23, 13 Car. II.; *Rex* v. *Askew*, Burr. 2186; *King* v. *City of Canterbury*, 1 Lev. part I, 119; *Sir Thomas Earle's Case*, Carth. 173; *Rex* v. *Mayor of Oxford*, 2 Salk. 428. The mode of proceeding in this early day to obtain a writ of *mandamus* was by a motion based upon an affidavit for a rule to show cause, why a writ of *mandamus* to perform a specified act should not be issued. The hearing of this motion was usually *ex parte*, no notice thereof being given to the other party. If the motion was sustained, an order was made directing the rule to show cause to be issued. It was provided in the order, that the rule should be served by delivering to the defendant a copy of the order, which required him to appear at a certain time and show cause against the issuing of the writ of *mandamus* described, and on the return day the defendant was heard, and any counter affidavits filed by him were considered. The affidavits in support of the motion should according to this old practice contain a precise statement of the facts constituting the relator's right to the writ, and the allegations were required to be stated in this affidavit so positively, that if false, the relator could be successfully prosecuted for perjury. Such affidavits should also show, that the relator was entitled to the relief he asked; that he had complied with all the necessary forms to constitute his right; and that he had applied to the defendant to do that which he asked, and that he had refused or neg-

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

lected to do it. If by the counter-affidavits of the defendant it was perfectly apparent that the relator was not entitled to the writ, the rule was discharged; but if the relator's right to the writ after the receiving of the counter-affidavits was doubtful, the rule was made absolute, in order that the right might be formally tried, and an order was entered directing an alternative writ, or *mandamus nisi*, to be issued.

In this writ it was absolutely necessary to set forth the facts, which entitled the prosecutor to the relief prayed for. It was addressed to the person or persons, whose duty it was to perform the act, and it commanded him or them to do the thing required, which was accurately specified, or show some cause why he or they should not do it. To this writ the defendant was required to make a written return either denying the facts stated in the writ or setting forth other facts sufficient to defeat the relator's claim. If the alternative writ or *mandamus nisi* was defective in form merely, the defendant could move to quash it, before he made his return; but for such defect he could not move to quash, after he made his return; but for a defect of substance the writ of *mandamus nisi* would be quashed at any time, before a peremptory *mandamus* was awarded. If the return of the defendant was adjudged as insufficient answer, or if he made no return, a peremptory *mandamus* was awarded commanding absolutely the defendant to do the thing required; and if this writ was disobeyed, an attachment issued against the defendant. If the return was sufficient in law but false in fact, the relator could not traverse it but was forced to resort to his action against the defendant for a false return. See Blackstone's Com. 111; Moses on Mandamus 202, 203; High's Ex. Rem. § 500, p. 360; Field on Corporations § 499, p. 571; *Commercial Bank of Albany* v. *Canal Commissioners*, 10 Wend. 30, 31.

As then the case was at common law determined entirely upon the alternative writ of *mandamus* and the

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

return thereto, the utmost strictness was required in these. It has even been said, that in a return to a *mandamus nisi* the same certainty was required as in indictments or returns to writs of *habeas corpus;* but it is questionable, whether this was not carrying the rule too far; (see *King* v. *The Mayor &c. of Lynn Regis,* Doug. 177) though Lord Chief Justice Holt in *Rex* v. *Abingdon,* 12 Mod. 401, says: "That a return to a *mandamus* at common law requires the utmost certainty the law allows of." Bartol Judge, says in *Harwood* v. *Marshall,* 10 Md. 464: "There is no branch of the law, in which more technical precision and nice discrimination are found, than the rules which governed the constructions of returns to writs of *mandamus* at common law." He then cites from Tapping on Mandamus 353, the principles, which at common law govern in such cases, and which, he says, are sustained by the authorities he quotes. This citation is: "The averments of the return must be certain. The certainty required by the common law is by some of the cases stated to be *certainty to every intent,* and therefore greater certainty than is requisite to a plea. Other cases have decided, that the certainty or strictness, which prevailed at common law, was the same that governed estoppels, indictments or returns to writs of *habeas corpus;* and as to them it is laid down, that nothing is to be taken or construed by intendment or inference, so that all material facts should be positively and distinctly alleged." But in an older case in Maryland it was held, that the common law required the same certainty in a return to a *mandamus* as in declarations and pleadings. See *Brosius* v. *Reuter et al.,* 1 Harr. & J. 551.

The ancient strictness and certainty required in the return of a *mandamus nisi* was based in part on the fact, that it could not be traversed, but was treated by the court as true. But in 1711, 9 Anne ch. 20, this rule was changed. By the second section of said act it was enacted, " that when a return is made to a *mandamus* in certain cases, it shall and may be lawful to and for the

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

person or persons suing or prosecuting such writ of *man-damus* to plead to or traverse all or any of the material facts contained within the said return ; to which the person or persons making such return shall reply, take issue or demur ; and such further proceedings and in such manner shall be had therein for the determination thereof, as might have been had, if the person or persons suing such writ had brought his or their action on the case for a false return ; and if any issue shall be joined on such proceedings, the person or persons suing such writ shall and may try the same in such place, as an issue joined in such action on the case should or might have been tried ; and in case a verdict shall be found for the person or persons suing such writ, or judgment given for him or them upon demurrer or by *nil dicit* or for want of a replication or other pleading, he or they shall recover his or their damages and costs in such manner, as he or they might have done in such action on the case as aforesaid, and a peremptory writ of *mandamus* shall be granted without delay for him or them for whom judgment shall be given, as might have been, if such return had been adjudged insufficient; and in case judgment shall be given for the person or persons making such return, he or they shall recover his or their costs of suit."

In 1843, (see 6 and 7 Vic. ch. 67), a further act was passed to enable persons to sue out and prosecute writs of error in certain cases upon proceedings on writs of *mandamus*. In 1854, (see 17 and 18, Vic. ch. 125), was passed the common law proceeding act, which changed very much the proceedings in *mandamus*. These acts are all to be found in the Appendix to High's Extraordinary Legal Remedies.

The effect of this statute of Anne was in cases falling within its provisions to assimilate the proceedings in *mandamus* to those in ordinary actions at law. The relator in his alternative writ of *mandamus*, sometimes called a *mandamus nisi*, set forth his right or cause of

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

action in a formal manner, which corresponded to a declaration in an ordinary action. The respondent then set up his defence by way of return, corresponding to a plea in an ordinary action at law. The relator then traversed this return or replied to it by way of confession and avoidance, corresponding to a replication in an ordinary suit, or he might demur, and to this again the respondent might reply by travers or by way of confession and avoidance; and so on till an issue of law or fact was joined, which was tried, as such an issue would be tried in an ordinary suit at law. This statute made the pleadings in certain *mandamus* cases substantially like those in ordinary suits at law; and the subsequent legislation in England rendered this likeness still more complete.

In some of the States of this country this statute of ˮAnne has been recognized by the courts as a part of their law, while in other States from an early day it has been substantially re-enacted, while in a few of the States for some time at least no such statute existed, as in Pennsylvania. We have always had such a statute in this State. It is the same as the Virginia statute, and is ch. 109 of our Code. (See p. 570). It is in these words:

"1st. When a writ of *mandamus* is issued, the return thereto shall state plainly and concisely the matter of law or fact relied on in opposition to the complainant.

"2d. The complainant may thereupon demur to the return or plead specially thereto or both.

"3d. The defendant may reply to, take issue on or demur to the pleas of the complainant.

"4th. If a verdict be found or a judgment be rendered for the person suing out the writ on demurrer or by *nil dicit* or for want of a replication or other pleading, he shall recover his costs and such damages as the jury may assess, and final judgment thereupon shall be awarded without delay, as if the return to the writ had been judged insufficient.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

" 5th. If judgment be rendered for the defendant, he shall recover his costs.".

This is a re-enactment substantially of the statute of 9th Anne with an extension of its provisions to all cases of *mandamus,* the statute of 9th Anne being confined to certain cases only of *mandamus.*

The practice in *mandamus* cases differs much in England and in the different States in this country, it being largely regulated by local rules, usages and statutes. Some of these diversities of practice are pointed out and commented on in *ex parte Garland,* 42 Ala. 559. Without undertaking to point out or comment on these diversities of practice I will simply state, that the usual practice in this State, and the most usual practice in this country, is to begin the proceedings by presenting to the court an application in the form of a petition setting forth in detail the grounds, upon which the petitioner asks a writ of *mandamus.* This petition in this State is usually *ex parte,* no notice that it will be filed being given to the defendants, and it is always supported by affidavit, when presented by a private person. *Goshorn et al.* v. *Supervisors of Ohio county,* 1 W. Va. 312 ; *Board of Supervisors of Mason county* v. *Minturn,* 4 W. Va. 302 ; *Shields & Preston* v. *Bennett, auditor,* 8 W. Va. 76 ; *Barnett* v. *Meredith, Judge,* 10 Gratt. 651 ; *Sights* v. *Yarralls,* 12 Gratt. 293. If a *prima facie* case is presented by this petition warranting the relief sought, the court frequently issues a rule, which is served on the opposite party, requiring him to show cause, why a *mandamus* should not issue. *Smith* v. *Dyer,* 1 Call 563 ; *Dew* v. *Judges of Sweet Springs,* 3 H. & M. 1 ; *Barnett* v. *Meredith, Judge,* 10 Gratt. 652 ; *Harrison* v. *Emmerson and other justices of Norfolk,* 2 Leigh 764 ; *Board of Supervisors of Mason county* v. *Minturn,* 4 W. Va. 302 ; *The Ohio Valley Iron Works* v. *The Town of Moundsville,* 11 W. Va. 8.

But in this State the issuing of this rule is frequently dispensed with ; and the most usual practice is to issue

the alternative writ immediately on the filing of a proper petition supported by affidavit. See *Bridges* v. *Shallcross*, 6 W. Va. 662; *Shields & Preston* v. *Bennett*, 8 W. Va. 72; *Fisher* v. *The Mayor of Charleston, infra.* Where the court thinks proper to issue a rule, and it has been served, if the defendant fails to answer it or files an insufficient answer, the court either issues a peremptory writ of *mandamus*, enlarges the rule or compels an answer, as may be proper in the particular case. But if the answer denies the facts stated in the petition or shows sufficient cause, why the rule should not issue, so that it appears, that there is a dispute of fact between the parties, an alternative writ of *mandamus* is ordered to be issued, in order that by the return to such alternative writ of *mandamus* a formal issue may be made up and tried. See *Dew* v. *Judges of Sweet Spring*, 3 H. & M. 1; *Douglass & Woodward* v. *Loomis, Judge*, 5 W. Va. 544. This alternative writ of *mandamus*, whether issued immediately on the filing of the petition or after the return of such a rule, here as elsewhere stands in lieu of a declaration in an ordinary suit. See *The People* v. *The Supervisors of Westchester*, 15 Barb. 612; *Canal Trustees* v. *The People*, 12 Ill. 254. The facts however, alleged in this alternative writ, may be alleged by way of recital; but it being in the nature of a declaration as well as of a writ, the sufficiency of these facts to entitle the plaintiff to the redress he seeks is called in question by a motion to quash the alternative writ or by a demurrer to it, and any defect in the recitals or allegations of this alternative writ cannot be aided by the petition or affidavit thereto, for though they be the foundation, on which the writ was issued, they constitute no part of the pleadings in the case. See *Commercial Bank of Albany* v. *Canal Commissioners*, 10 Wend 25; *Johnson* v. *The Auditor of the State*, 4 Ohio St. 493; *People* v. *Baker*, 25 Barb. 105. If the petition does not state the necessary facts to justify the issuing of an alternative writ or a rule, neither ought to be issued, and if issued, on the return day this

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

fatal defect should be taken advantage of not by de-murrer but by a motion to quash the alternative writ or to discharge the rule as improvidently awarded. The petition and affidavit bear to the *mandamus nisi* a relation similar to that, which an affidavit bears to an attachment.

When the alternative writ of *mandamus* has been issued, if the defendant does not do the act required, and the writ be not quashed on motion or dismissed on demurrer, the defendants, to whom it is addressed, and none others must make a return thereto. This return under our statute is in the nature of a plea in an ordinary action at law, and it must be tested by the ordinary rules of pleading both as to its form and substance. It must therefore be in the nature of a traverse or a plea in confession and avoidance; and if insufficient in law, it may be demurred to by the complainant, or he may reply thereto; (see *Commercial Bank of Albany* v. *Canal Commissioners of the State of New York*, 10 Wend. 20; *The People* v. *Baker*, 25 Barb. 105; *The Commissioners ex re. Middleton* v. *The Commissioners of Allegheny County*, 37 Pa. St. 237; *Biggs* v. *Johnson*, 6 Wall. 185); and so the pleadings proceed as in an ordinary common law suit, till the parties are at issue in fact or law, which issues are tried as in an ordinary action at law.

Syllabus 2.

As we have seen, prior to the statute of 9th Anne a greater accuracy and certainty was required in the alternative writ of *mandamus* and in the return thereto than in the pleadings in an ordinary suit at law. This arose from the writ of *mandamus* being regarded as a prerogative writ and from the return not being traversable. After the passage of this act the English courts, partly because the writ was still regarded as a prerogative writ, and partly from a too close following of the decisions rendered when the return could not be traversed, for a time continued to require great certainty in the pleading, in *mandamus* cases. But the modern decisions in England show some relaxation in the strictness required in such pleadings; and in this country the *mandamus* writ

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

is very generally regarded as having entirely lost its prerogative character, and the spirit of our decisions is to regard it in the same light as an ordinary action at law and to apply to the pleadings in it the ordinary rules of pleading, neither greater nor less strictness being required than in the pleadings in an ordinary action at law.

There are very many cases illustrating the application to the pleadings in *mandamus* cases of the ordinary rules of pleading. Thus in a *mandamus* case a plea taking issue on an immaterial fact is bad on demurrer. (*State* v. *Eaton*, 11 Wis. 29). The alternative writ like a declaration must state a case which entitles the party to the relief he seeks, and if it does not, like a declaration in an ordinary suit it may be demurred to by the defendant, (*People* v. *Hatch*, 83 Ill. 139; *People* v. *Mayor of Chicago*, 51 Ill. 28; *State* v. *Everett*, 52 Mo. 89). So if the respondent in a *mandamus* case pleads to the merits, he thereby waives his plea in abatement in like manner as in an ordinary suit, (*Silver* v. *The People*, 45 Ill. 227). The return to a *mandamus nisi* like a plea to a declaration in an ordinary suit must state the facts positively and specifically and not argumentatively (*Com.* v. *Commissioners of Allegheny County*, 37 Pa. St. 237). But in this connection it should be observed, that the alternation writ of *mandamus*, while it stands in place of a declaration, is still put in the form of a writ, and therefore its preamble reciting the facts, on which the plaintiff bases his demand, is put in the form of a recital or follows a "whereas" in violation of a rule of pleading. This violation arises from this *mandamus nisi* necessarily preserving the form of a writ. But this violation of the rule of pleading goes no further than the necessity, under which it arose, and hence every fact must appear in it, which would be necessary in any other declaration at common law according to the rules of pleading. (See *Fisher* v. *Mayor, &c., of Charleston, infra*). So too the rule, that a traverse must be taken to a matter of fact and to

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

a matter of law, is equally applicable in *mandamus* cases as in ordinary actions at law. (See *King* v. *L. Mayor of York*, 5 T. R. 66). So inferences of law from the facts stated need not be set forth in a *mandamus* case any more than in the pleadings in an ordinary suit. (*King* v. *Mayor of Lynn*, Regis. Doug. 149). So too the rule, that a demurrer reaches back to the first fault in the pleading of either party, is applied to the pleadings in *mandamus* cases as in ordinary suits at law. (*People* v. *Ransom*, 2 N. Y. 490; *Commercial Bank* v. *Canal Commissioners*, 10 Wend. 26).

Syllabus 3.    As a matter of convenience it is sometimes stipulated, that the petition may stand for the alternative writ, or that the rule for a *mandamus nisi* shall stand for the alternative writ, and then of course by consent of parties and with the assent of the court this petition or rule, as the case may be, is regarded as in lieu of a declaration, and the ordinary rules of pleading are applied to them, which without such stipulation would not be the case. Regularly this stipulation or agreement should be entered or noticed on the record. But without any such formal stipulation cases occur, where the court has treated the petition or the rule, as though it had been the alternative writ, but in these cases no objection appears to have been made to this informal mode of proceeding, and it may be inferred, that though no assent was entered of record, yet there was really an assent thereto by the parties. See *The People* v. *The Delaware Common Pleas*, 2 Wend. 255; *Supervisors of Fayette County* v. *Rule*, 5 W. Va. 276. But such precedents should be avoided as tending to confusion and difficulty.

We have stated the law governing the practice and pleadings in *mandamus* cases at some length, because this case must be decided on this law, and it does not, as this case is now presented, involve, as most of the *mandamus* cases which have been before this Court, any question as to the right of the plaintiff to enforce his rights by *mandamus*, but only whether the proceedings

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

in this case have been so irregular as to necessitate their being set aside in whole or their being set aside in part and the case remanded to the circuit court to be correctly proceeded with.

There can be no question, but that, when a judgment Syllabus 4. has been obtained against a municipal corporation, and an execution has been issued thereon, and it has been returned "no property found," the creditor has a right to enforce this payment of his judgment by a *mandamus* issued against the proper municipal authorities compelling them to make a sufficient levy to pay this debt. See *Coy* v. *The City Council of Lyons City*, 17 Iowa 1 ; *The City of Olney* v. *Harvey et. al.*, 50 Ill. 455 ; *Frank* v. *The City and County of San Francisco*, 21 Cal. 688 ; *The City of Galena* v. *Amey*, 5 Wall. 705.

The first question of real doubt in this cause is, whether the petition was such as justified the court in Syllabus 6. issuing the rule. The defendant in error insists, that the petition did not justify this rule, because it does not allege the non-payment of the plaintiff's debt. It is true, that it is well settled in Virginia and in this State, that in an ordinary action, whether in debt or assumpsit to recover a debt, it is necessary for the plaintiff in his declaration to allege non-payment of the debt. See *Braxton's adm'r* v. *Lipscomb*, 2 Munf. 282 ; *Hill* v *Harvey*, 2 Munf. 525 ; *Buchner* v. *Mitchell's ex'r*, 2 Munf. 336 ; *Nicholson* v. *Dixon's heirs*, 5 Munf. 138 ; *Strong* v. *Floyd*, 2 Gratt. 474 ; *Douglass* v. *Central Land Co.*, 12 W. Va. 511. But these cases holding that non-payment is a necessary allegation in every declaration while binding on us are not perhaps really consistent with the true principles of pleading. Elsewhere the payment has been regarded as a defence, and therefore it was unnecessary to negative it in the declaration by alleging non-payment. See *Goodchild* v. *Pledge*, 1 M. & W. 362 ; *Douglass* v. *Central Land Co.*, 12 W. Va. 508. But as in this State it is necessary in an action to recover a debt, whatever be its form, to allege in the declara-

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

tion the non-payment of the debt, it necessarily follows, that an alternative *mandamus* or *mandamus nisi,* which is regarded as a declaration, must allege a non-payment of the debt. But we cannot thence conclude, that it is necessary for the petition to allege specifically the non-payment of the debt. The petition does not constitute a part of the pleadings in a *mandamus* case, and the strict rules of pleading are not applicable to it. All that is necessary in the petition is to allege specifically such facts as *prima facie* sustain the plaintiff's demand, that is, such facts, as if proven, in the absence of any other evidence would justify the issuing of a *mandamus.* Now the only facts necessary to be proven would be the obtaining of a judgment and the failure to make the amount of it on issuing an execution. It would be unnecessary for the plaintiff to go further and prove the non-payment of it. If in fact it had been paid, it would be necessary for the municipal corporation to prove such payment, to defeat the plaintiff's right to a *mandamus.* The *prima facie* case required to be stated in the petition is therefore made out without the allegation of non-payment, and such allegation is unnecessary in the petition, though such allegation must in this State be made in the *mandamus nisi,* which stands in lieu of a declaration, as in this State every declaration in a suit to recover a debt, whatever be its form, must allege non-payment.

Sylalbus 5.    The next defect in the petition, which the defendants in error insist is fatal, is, that there is no allegation made in it, that any demand had been made by the plaintiff on the defendant to make the levy for the plaintiff's debt, which it is sought now to compel it to make by the proceedings in this case. It is true, that highly respectable authorities hold, that no writ of *mandamus* can be granted to compel the performance of any duty, until and unless a demand has been made upon the party, and he has refused to perform this act. See *State* v. *The Governor,* 1 Dutch. 344; *State of Minnesota ex rel* v.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston

*Davis*, 17 Min. 429; *Condit* v. *Commissioners of Newton Co.*, 25 Ind. 422; *Leonard* v. *House*, 15 Ga. 473; *Murran* v. *Smith*, 8 R. I. 192; *Rex* v. *Becknock and Abergavenny Canal Co.*, 3 Ad. & E. 217, (30 Eng. Com. L. R. 81); *The Queen* v. *The Bristol & Exeter Railway Co.*, 4 Ad. & E., N. S. 162, (48 Eng. Com. L. R. 161); *Neville* v. *Manning*, 4 Nev. & M. 871, 872; *The Queen* v. *Frost*, 8 Ad. & E. 822, (35 Eng. Com. Law R. 536). In other cases a distinction is made between the cases, when the plaintiff has a private interest only, and those where the duty sought to be enforced is of a public nature and incumbent on a public officer by virtue of his office. In the first case a previous demand is held to be necessary; and in the second no demand and refusal is necessary. *Orrville & Vinginia Railroad Co* v. *Supervisors of Plumas*, 37 Cal. 354; *Commonwealth* v. *The Commissioners of Allegheny*, 37 Pa. St. 237; *State* v. *The County Judge of Marshall*, 7 Ia. 186; *Same* v. *Bailey*, 7 Ia. 390.

Again some courts have held, that when the performance of the duty sought to be enforced by *mandamus* is of a character, that it could not be expected to be performed until demand, the writ of *mandamus* should not issue till demand made; but when the law unconditionally requires the doing of a particular act, no demand is necessary. As for instance, if the duty to be performed is a corporate duty of a plain and unequivocal nature, concerning which there can be no dispute. See *Humbolt Co.* v. *County Commissioners of Churchill*, 6 Nev. 30; *State ex rel. Farr* v. *The City Council of the City of Racine*, 22 Wis. 259; *Commonwealth* v. *Commissioners of Allegheny*, 37 Pa. St. 237; *Motter* v. *Primrose*, 23 Md. 482; *Ellicott* v. *Levy Court*, 1 H. & J. 359; *Smith* v. *Erb*, 4 Gill 442.

The true rule is, I think, laid down in the case of *Motter* v. *Primrose*, 23 Md. 501 and 502. The court there say: " The writ of *mandamus* not being *ex debito* but in all cases resting in the sound discretion of the court, there may be some cases, in which the court in

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

the exercise of its discretion would refuse the writ, when no previous demand and refusal had been made, or when the claim of the petitioner or the duty to be performed was uncertain or not clearly known to the defendant. Such however is not the case here, and, it not being the case, to require of the petitioner a prior demand upon them to discharge their duty would be to require of him a useless and unnecessary act."

A careful consideration of these conflicting authorities and of the practical results from our adopting the one or the other rule induces me to adopt the rule laid down by the Maryland case. Applying it to this case, it was unnecessary, that before the filing of the petition any demand should have been made on the defendants to make the levy sought to be enforced. It was the plain duty of the defendants, after the plaintiff had obtained a judgment and had issued an execution, and it had been returned "no property found," to make the requisite levy to pay the established debt, which they knew could be paid in no other manner, and therefore to require of the plaintiff a previous demand on them to discharge this duty would have been to require of him a useless act. It would therefore in such a case be unnecessary to allege such useless demand either in the petition or in the *mandamus nisi*.

The only other objection urged by the defendant in error is, that a *mandamus* is asked by the petitioner against the mayor, recorder and councilmen "constituting under the laws of West Virginia the corporation of the city of Charleston," but there is no allegation, that they have the power to make the levy asked. This objection to this petition cannot avail the defendants in error. The general law of this State (see Code, ch. 47, § 14) declares, that all the corporate powers of a municipal corporation shall be exercised by its council, and that the mayor, recorder and councilmen shall be the body politic and corporate, and the 13th section declares, that the mayor, recorder and councilmen constitute this

council. The courts of course take judicial notice of this law, and when by the general law a power exists in certain parties to do a certain act, it is unnecesssary to allege in pleading the existence of such power. *King* v. *The Mayor of Lynn Regis,* Doug. 149.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston

The only other possible objection, which could be urged to this petition, is, that it prays, that a rule may be issued to show cause why a writ of *mandamus* should not issue commanding the treasurer to pay to your petitioners any unappropriated money in his hands not exceeding the judgment, interest and costs, or for want of such funds commanding the mayor, recorder and councilmen to make the requsite levy. The alternative writ of *mandamus* could not properly issue against the treasurer to pay over the unappropriated moneys in his hands not exceeding the plaintiff's demand, but only against the mayor, recorder and councilmen requiring them to make the requsite levy, or show cause against it.

The petition and rule are preliminary proceedings and not a part of the pleadings and not to be tested by the rules of pleading in ordinary actions; and I can therefore see no valid objection to the petition, though the prayer of it be improperly against the treasurer in part. See *Fisher* v. *The Mayor, &c., of Charleston, infra.*

The rule issued on the filing of this petition was in accordance with the prayer of the petition and is unobjectionable; and the motion to quash it was properly overruled.

The answer alleged, first, that the council did levy the tax, and secondly, had paid the plaintiff's claim in part. This answer was filed only by the mayor, recorder and councilmen. No answer to the rule was ever made by A. P. Gates, the treasurer. As we have seen, no *mandamus* could have properly issued against A. P. Gates, the treasurer; for it was not his duty to pay the plaintiff's judgment out of any unappropriated funds in his hands. It would be his duty to pay this judgment, only when the money was appropriated by the council

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

to the payment of the plaintiff's judgment. The plaintiff therefore very properly abandoned the proceeding against the treasurer and proceeded only against the other defendants. The court properly overruled the motion for a peremptory *mandamus,* because the answer to the rule was sufficient. They answered that they had already on November 24, 1876, levied the tax required by the plaintiff and had set it apart to satisfy the plaintiff's demand. This was a sufficient answer, if true. The plaintiff demurred to it. This was not a proper mode of raising the question, whether this answer to the rule was sufficient. The proper mode would have been to move the court for a peremptory writ of *mandamus,* as would have been done, had no answer been filed; and an answer insufficient in law should be treated as no answer. But as this answer was in law sufficient no peremptory *mandamus* could be ordered, and the court did right in refusing it; but the court should have ordered an alternative writ of *mandamus* against the city of Charleston, ordering it to do the acts required, or to show cause, why the same had not been done. This is, as we have seen, the only legitimate mode of trying formally the dispute of facts disclosed by the petition and the return to the rule.

The motion of the defendants to quash the rule was properly overruled by the court. The issuing of it was sustained by the petition, which set forth all the requisite facts to entitle the plaintiff *prima facie* to the relief he sought, and this petition was sustained by affidavit. The order reviving the proceedings in the name of the council which had been elected since the institution of the proceedings without any notice to them was irregular. The proper mode of proceeding, if the plaintiff desired to ask his *mandamus* against the mayor, recorder and councilmen of Charleston, was to ask the court after the return of the rule for an alternative writ of *mandamus* or a *mandamus nisi* against the "city of Charleston." It was at one time held, that the writ could only be direct-

ed to the body politic in its corporate name, and if addressed to the mayor and alderman of a municipality, it would be quashed. (See *Regina* v. *The Mayor of Henford*, 2 Salk. 701); but the contrary is held in this country. (See *Mayor* v. *Lord*, 2 Wall. 409). Where the municipal corporation is composed of several distinct organs or bodies, the writ should be addressed to that particular branch of the municipal corporation, whose duty it is to do the particular act required. (*People* v. *The Common Council of New York*, 3 Keyes 81); but where the municipal corporation, as in the case before us, is not composed of distinct bodies or organs, the better mode is to address the writ to the corporation by its corporate name, though this is not absolutely essential. It saves however all the trouble of reviving the proceedings, where the persons comprising the corporation are changed pending the proceedings; and though the alternative writ of *mandamus* or *mandamus nisi* was addressed to the " city of Charleston," yet, if the peremptory writ should be finally issued, it would be against the then mayor, recorder and aldermen of the city of Charleston, whoever they might then be, commanding them to do the act required; and they would be enforced to perform it. See *The State* v. *The City of Milwaukie*, 25 Wis. 134.

In the case before us after the defendants had filed their answer, and the court held it sufficient in law, as it did by refusing the peremptory writ, though it and the petition showed, that there was a dispute of fact between the parties, it failed to order any *mandamus nisi* or alternative writ of *mandamus* to be issued. This was the only proper mode of trying this disputed question of fact. But instead of this the court permitted the plaintiff to reply generally to this answer; and on the issue thus made up the jury found a special verdict, on which the court held the law to be for the defendants, and decided, that the plaintiff was not entitled to a peremptory writ of *mandamus,* and dismissed the petition

1861
Spring
Special Term.

Fisher
v.
The City of
Charleston.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

Syllabus 10.

and rule and gave a judgment for the defendants against the plaintiff for their costs.

In all these proceedings after the answer to the rule the court and parties seem to have confounded this rule, to show cause why a *mandamus* should not issue, with the *mandamus nisi* or alternative writ of *mandamus*, which is a writ directing the defendants to do the act required, or to show cause why they do not. This writ differs very essentially from the rule. The rule need not set out any of the facts, on which the plaintiff bases his demand, and in this case it does not set out any of these facts. It is of course therefore impossible to make up any proper issue on this rule. The alternative writ of *mandamus* on the contrary sets out specifically all the facts, on which the plaintiff bases his claim, it being in fact the plaintiff's declaration. It should be drawn up by the counsel and with all the particularity, with which a declaration is drawn. In this case in addition to all the facts stated in the petition it should allege the non-payment of the plaintiff's debt by the city of Charleston. See *Johnes* v. *the Auditor of the State*, 4 St. Ohio 493. Such an alternative writ so drawn is a proper basis, when followed by the proper pleadings for the formal making up of an issue of fact or of law, as the case may be, but the rule is not such a basis as can with any propriety be the foundation of pleadings, especially when as in this case it sets out none of the essential facts, on which the plaintiff bases his claim. There was not any agreement of parties to regard this rule as a substitute for the alternative writ, and none such could be implied; nor was there any agreement to regard the petition as such substitute, even if the court would allow such agreement to be carried out or entered of record. In this case the necessary allegations, which should be in the *mandamus nisi* are not all in the petition, as for instance the allegation of the non-payment of the debt. We must therefore regard all these proceedings subsequent to the return of the rule as irregular and improper.

Of course the rejection of the special replications, Nos. one, two and three, to the answer of the defendants to the rule was proper without reference to the merits of these replications or to the time when two of them were offered. There should have been no replication, general or special, to the answer to the rule; but on the filing of the answer in this case an alternative writ of *mandamus* should have been awarded, to be addressed to the "city of Charleston;" and on the return made to this writ replications might be filed, provided they were proper replications. But as the questions of law intended to be raised by these special replications will probably be again raised in a proper manner, when this cause is remanded to the circuit court of Kanawha for further proceedings, it is proper, that this court should express its views on these questions for the guidance of said circuit court in its further proceedings.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

When a creditor has recovered a judgment against a municipal corporation, and an execution on it has been returned "no property found," such judgment-creditor has a right to have specifically appropriated to the payment of his judgment any unappropriated funds of the corporation; and if there be none, he has a right to have a levy made by the corporation sufficient to pay and satisfy his judgment, and to have it specifically set aside for that purpose. And when he proceeds to ask a *mandamus* to enforce this duty, it is no sufficient answer to a rule for the municipal authorities to say, that they had theretofore levied a sufficient tax to pay all the indebtedness of the corporation. See *Coy* v. *The City Council of Lyons City*, 17 Ia. 1; *Frank* v. *The City and County of San Francisco*, 21 Cal. 688. But I can see no reason, why a municipal corporation in the performance of this duty should be required to levy a separate tax to satisfy each several creditor. Its duty to any one judgment-creditor is performed, when it levies a sufficient tax to pay him and other specified creditors the whole amount of their respective debts promptly, and specially appropriates the

Syllabus 8.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

Syllabus 9.

proceeds of the tax to the payment of these specified debts. But it is bound to levy a sufficient tax to pay each of such specified creditors promptly. If by reason of delinquency in the payment of these taxes, when they ought by law to have been paid, sufficient moneys cannot be collected, though there may be sufficient property of the delinquent tax-payers, out of which enough might be raised ultimately to pay all the creditors, for whom the tax was specifically levied, yet such a levy would be held insufficient in law, for such creditors are not bound to wait longer for the payment of their respective debts than the time, when the taxes ought to have been paid by the tax-payers according to the law. Therefore after that time has elapsed any judgment-creditor, for whom such specific levy has been made, has a right to ask a writ for a *mandamus* to compel a sufficient specific levy to be made for the payment of his debt. This duty to levy a tax to pay such judgment-creditor is a continuing duty, and if it be not paid promptly out of the one levy made for that purpose, it is the duty of the council promptly to make another levy.

By saying they must make another levy, if it is not paid promptly out of the first levy, I mean, if it is not paid at the time when by law the tax-payers are required to pay their taxes. If a sufficient amount to pay all the specified debt is not collected of the tax-payers within the time allowed by law to the tax-payers to pay their taxes, this is in law conclusive evidence, that the levy was insufficent.

Such a judgment-creditor is not bound to wait, till the property of delinquent tax-payers is sold. It was the duty of the council to make the levy sufficiently large to raise the required fund out of those, who habitually paid their taxes promptly; and if they have failed to do so, they may be properly enforced to do so by *mandamus*. See *Soutter* v. *The City of Madison*, 15 Wis. 31.

The court below in the case before us ought not to have permitted the rule to have been amended in the

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

manner in which it was amended, that is, by inserting the word "special" before the phrase "tax upon the taxable property." The rule read "commanding them forthwith to levy a tax upon the taxable property, &c., and to set apart the proceeds of such tax for the payment of said judgment." Now the plaintiff had only a right to have a sufficient tax levied and set aside specifically for the payment of his debt. This the original rule asked; and he could ask no more, and in fact the amendment did not really change what was asked by the original rule. For the specific appropriation of a tax, at the time it is levied, to the payment of a specified debt makes it a specific tax. The amendment therefore to the original rule, which the court permitted, did not change the legal meaning of the rule, and for this reason the court ought not to have permitted it to be made. If to an alternative writ of *mandamus* the defendants had made a return substantially the same as their answer to the rule, special replications setting up the replies, which were designed to be set up by the two special replications, which have been offered to be filed in this cause, ought not to be received, as a levy to pay the plaintiff's judgment and certain other specified judgments is not a general levy but a specific levy, and if sufficient in the legal sense of that word as above explained, it is all the plaintiff can demand.

I understand the third special replication to be intended to meet the defendants' allegation, that they had made a levy sufficient to pay the plaintiff's claim and had set it apart to the payment thereof by replying, that the funds, which had been so collected for this purpose had been since then otherwise appropriated and applied. If a return to the *mandamus nisi* is made substantially the same as the answer to the rule, such a replication ought to be allowed to be filed, if properly pleaded and offered at the proper time, not as this one was after the jury had returned their verdict.

The record-books of the city council of Charleston are proper evidence of what that city council had done.

79

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

Nothing need be said about the variance in the date of the judgment in the special verdict and in the petition, as, I presume, it was the result of carelessness and will not be likely to again occur. Nor need anything be said about the propriety or impropriety of tax-payers of the city of Charleston sitting on the jury. The issue had been improperly made on pleadings, of which the rule instead of an alternative writ was the basis; and if it shall be hereafter properly made on an alternative writ, the court can no longer have any difficulty in forming the jury in the case properly, as it will be governed in its action in this matter by the act of the Legislature passed at its last session on March 10, 1881, approved March 12, 1881, entitled "An act to authorize judge, jurors and officers of the court to act in certain cases."

The verdict of the jury, if it had been made on a general replication to a return to an alternative writ in substance the same as the answer to the rule, would still have been utterly defective. One of the questions, and indeed the principal question submitted to the jury on such an issue would have been: Was the special levy made by the council of the city of Charleston on the 25th of November, 1876, sufficient, that is, in this case did this levy produce in actual cash within the time, within which the tax-payers were required by law to pay the same, a sum which added to the surplus of old taxes actually collected before that time and applied to the debts specified would have been sufficient at that time to pay all the specific debts provided for by that levy, that is, about the sum of $23,150.00? If it did not, this levy was in law insufficient, for the plaintiff was not bound to wait till sufficient money to pay him and the specified creditors was made out of delinquent tax-payers, even though the requisite amount could have been made from them ultimately. The verdict however fails utterly to find, whether this special tax was or was not sufficient, and thus utterly fails to respond to the principal ques-

tion of fact submitted to the jury for its determination. The verdict of the jury should therefore be set aside, both because it was rendered on an issue improperly made up, and because it did not respond to the issue.

1881
Spring
Special Term.

Fisher
v.
The City of
Charleston.

For these reasons the judgment of the circuit court rendered on December 17, 1879, must be reversed and annulled, and the verdict of the jury rendered on that day, the order of the court made June 25, 1879, permitting the amendment to the rule, and also the order of the court made on the same day directing a revival of the proceedings in this case agaist new parties, and also so much of the order of the court of date June 27, 1878, as permitted a demurrer to be filed to the answer to the rule, and also as permitted the filing of the general replication to this answer, and also the similar order of June 24, 1878, so far as it permitted such demurrer to be filed, must all be set aside and annulled, and said demurrer and replication stricken out; and the plaintiff in error must recover of the defendants in error his costs in this Court expended; and this cause must be remanded to the circuit court of Kanawha county to be further proceeded with according to law and the principles laid down in this opinion, and with instructions to award a proper alternative writ of *mandamus* against the city of Charleston.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.