# CHARLESTON.

## NEW MARTINSVILLE *v.* TELEPHONE CO.

Submitted September 7, 1909.   Decided February 12, 1911.

1.  MANDAMUS—*Subjects of Relief— Compelling Telephone Company to Remove Poles.*

    In order to entitle a municipality to proceed by *mandamus* to compel a telephone company to remove one of its poles, lawfully erected on one of its streets, it must first notify such company particularly and definitely of what it desires it to do.

2.  SAME.

    If the municipality has reserved the right to select the location for such poles, the notice to remove is incomplete and insufficient in law, if it fails tó designate particularly the place to which, as well as the place from which, it desires the pole to be removed.

(BRANNON, JUDGE, absent.)

Error to Circuit Court, Wetzel County.

*Mandamus* by the Town of New Martinsville against the Enterprise Telephone Company.   From a judgment refusing the writ, relator brings error.

*Affirmed.*

*Hall & Hall,* for plaintiff in error.

*E. H. Yost,* for defendant in error.

WILLIAMS, PRESIDENT:

The Town of New Martinsville applied to the circuit court of Wetzel county for a writ of *mandamus* to compel respondent to remove one of its telephone poles standing on North street in said town.   The court refused the writ; and relator has brought the case here on writ of error.   The pole was erected pursuant to a franchise granted by the town to F. P. Lowther, his heirs and assignees, permitting him to erect telephone lines and poles in, and upon its streets, and to operate the same.   The location of all poles was subject to the direction of the street committee of the town council; and the pole in question was erected several years ago.   Respondent succeeded to the rights of Lowther in the franchise.

New Martinsville is situated on the Ohio river. North street runs at right angles to the river and crosses a ravine, or gulch, which in times of flood in the river is filled with water by the overflow from the river above the town. In times of very high tide driftwood and oftentimes small frame buildings are carried down this gulch. High street is raised by a long fill which crosses this gulch, and the fill is supported by stone retaining walls on either side of the street which are ten or twelve feet high, at the highest point. The coping of these walls are mounted with an iron fence so constructed that it can be easily taken down in case of a flood in the river so as to permit driftwood to float over the top of the walls. A number of poles had been erected in the street along on top of this fill close to the curbing. These poles had been erected, and were owned, by different companies, some by the Central District & Printing Company, some by the Tyler Railway Company, some by the New Martinsville Heat, Light & Power Company, and one by this respondent. Houses abut on this fill at either end, for some distance, and there is an open space between the buildings, a distance of 129 feet, and through this open space the water flows when there is high tide. In the year 1907 a very high flood occurred in the Ohio river, and a quantity of driftwood and other material floated down this ravine, and lodged on the fill, broke down one or two of the poles and caused a good portion of the retaining wall on the south side of the street to give way and fall. Sometime thereafter, the town council passed an ordinance notifying said companies to remove their poles from the fill. Notice was given respondent, October 14, 1907, to remove its pole. It did not obey the notice and the town sued out an alternative writ of *mandamus.* Respondent demurred to the writ, alleging a number of grounds, and also made answer and return thereto. The answer set up the defense that respondent had a right to maintain its pole on the fill where it was; that it had caused no damage to the wall; that it was not likely to do so at any time in the future; also that it had not been sufficiently advised, by notice from the town authorities, in regard to what the relator desired to have done; that it had not been advised of a place where it might lawfully reset its pole. Many witnesses were examined before the court on the question of the necessity of the removal of the pole, and their testimony

is made a part of the record. On the 7th of December, 1908, the court dismissed the writ.

It is not claimed that the pole was unlawfully placed where it is, but the proceeding is based upon the theory that to allow it to remain there would endanger the retaining wall of the fill in times of high tide. The fill is 476 feet long, and respondent's pole stands in the open space, 38 feet from the nearest building abutting on the fill. The notice to respondent to remove its pole is not confined to its removal from the open space alone, but is a notice to remove it from the fill. Such also is the command of the alternative writ. Was not respondent entitled to have a place pointed out to it by the proper town authorities for the relocation of its pole, before it could be compelled to take it down from the place where it had been lawfully erected? It was certainly entitled, under its franchise, to maintain its pole at *some point* on the street. Must it be compelled to take down its pole, and await the future action of the town authorities before it can relocate it? We think respondent's rights cannot be thus disregarded; and that it was entitled to know where to, as well as where from, to move its pole, before it would be liable to *mandamus*. One of the reasons given by respondent in its return for failing to comply with the notice is, that it did not know where to reset its pole. Is this not a sufficient reason for non-compliance; and, therefore, a sufficient reason for a denial of the writ?

The duty, if any, which respondent owed the city in relation to removing its pole is not such that it was bound to know it, and to perform it, in any event. It was, therefore, a necessary prerequisite to relator's right to *mandamus* that respondent should have had notice of what was required of it. 26 Cyc. 181; 17 A. & E. E. L. (2nd Ed.), 760; *Fisher* v. *City of Charleston,* 17 W. Va. 618; Merrill on Mandamus, section 222. "The demand must be express and distinct and not couched in general terms, but should plainly and accurately demand the performance of that which the court is asked to compel the respondent to do." 19 A. & E. E. L., 761; *Price* v. *Riverside L. & I. Co.,* 56 Cal. 431.

It follows from what we have said that the allegations in the alternative writ fail to make out a *prima facie* case, and the demurrer thereto should have been sustained. But inasmuch

as the court below dismissed the writ on a hearing of the case, apparently upon the merits, and after having previously overruled the demurrer, we will affirm the judgment, it clearly appearing that relator had no right to apply for the writ at the time it did apply.

*Affirmed.*