THE PEOPLE EX REL. ROLLINS v. THE BOARD OF COUNTY
   COMMISSIONERS OF THE COUNTY OF RIO GRANDE ET AL.

1. MANDAMUS.
A mandamus is not regarded as a prerogative writ.
2. JUDGMENTS—COLLATERAL ATTACK.
In mandamus proceedings against a board of county commissioners to
     compel the levy of a tax for the payment of a judgment against a
     county, the judgment must be accepted as a verity, not open to
     collateral attack.
3. STATUTORY CONSTRUCTION—"MAY"—"MUST."
In the construction of statutes, such as the act of April 28, 1887 (Sess.
     Laws, 1887, p. 240), the word "may" is to be interpreted to mean
     "must."
4. MANDAMUS TO COMPEL LEVY OF TAX.
When there is no fund in the treasury applicable to the payment of a
     judgment against a county, the judgment creditor is, upon the
     refusal of the board of county commissioners to levy a tax for the
     payment of the judgment, entitled to peremptory mandamus to
     compel them to levy one for that purpose.
5. PLEADINGS IN MANDAMUS, HOW CONSTRUED.
A petition for a mandamus is to be construed in the same manner as
     an ordinary complaint.   Certainty to a certain intent in every par-
     ticular is no longer a prerequisite to the issuance of the writ.

*Error to the District Court of Rio Grande County.*

Mr. E. F. RICHARDSON, for plaintiffs in error.

Mr. JESSE STEPHENSON and Mr. GEO. P. WILSON, for de-
fendants in error.

Messrs. DOUD & FOWLER, *amici curiæ.*

BISSELL, J., delivered the opinion of the court.

Frank W. Rollins, the owner of a judgment against Rio
Grande county, instituted these proceedings in mandamus to
compel the county to levy a tax to pay the judgment.   As orig-
inally formed, issues both of fact and of law were tendered

by the petition and the answer. All questions of fact were subsequently eliminated by stipulation of counsel and an order of court, and only that part of the answer was retained which practically, though somewhat informally, tendered an issue of law as upon a demurrer regularly and formally put into the petition. We are therefore only concerned with this matter. Stating only the salient and material allegations, the petition recited the organization of the county of Rio Grande under the constitution of the laws of Colorado, and its possession of the general contractual, governmental and political powers which belong to this class of corporations ; the election of a board of county commissioners, who were named and alleged to have been representing the county and transacting its business at the time of the demand of payment; the recovery of a judgment in January, 1885, by Burrows in one of the district courts of the state for $10,502.77 and costs ; the nonpayment of the judgment, and the petitioner's title. The judgment was in force and unreversed, and the right of the petitioner to collect it was stated in apt terms. The steps taken to collect it were fully narrated. On the 11th of December, 1893, the petitioner served a notice and demand on the board of county commissioners at one of the regular sessions when all the parties named as commissioners were present. Generally, the notice recited that the plaintiff, Rollins, was the owner of the judgment, and the board was requested to levy a tax to pay the judgment and interest, demanding that it be levied and put on the tax roll of the county for the current year. The notice was dated on the 11th of December, and served on the same day. This claimant owned several other judgments against ·the county and his demand covered them. The petition purported to state the record of the proceedings of the board at this meeting. The board ordered that the demand which was made by Rollins be rejected, and the clerk was instructed to notify him that the board declined to levy a tax or to pay the judgments. The petition alleged there were no funds in the treasury applicable to the payment of the debt, and that

there had been none therein since the rendition of the judg-ment.   The failure of the county to pay the judgments or any part of them or to levy any tax to liquidate them was averred.   These in brief are the allegations of the pleading.

When the petition was filed, an order was made directing the issue of the alternative writ, which accords both with the statute regulating proceedings in mandamus and is in har-mony with the usual course of the common law.   The order was not carried out, but the county appeared and stipulated that the petition should be taken for the alternative writ and the matter be heard on the law issue formed by the pleadings. This was not an irregularity which at all affects the proceed-ings and really accords with the very general practice which now prevails.   A mandamus is no longer regarded as a pre-rogative writ.   Its form, tenor and purpose, and perhaps it may therefore be said many of its objects, are totally different from those which obtained when the writ was first devised. This position could be easily sustained by a reference to the authorities.   However interesting this might be as a bit of history or of learning, it would have very little significance in the determination of the present matter, or aid in the establishment of a practice which may be deemed pretty well settled by both the statute and the decisions.   *Fisher v. The City of Charleston*, 17 W. Va. 595.

We now recur to the main question.   Put in the tersest fashion, it concerns the right of a judgment creditor to com-pel a county to levy a tax to pay his judgment.   If this right exists, it must be either because it is conferred in direct terms by some statute, or conferred in terms which grant the right when the act is construed according to well recognized principles of statutory construction.   The revenue legislation pertaining to this matter, and that which confers political and governmental authority on these subdivisions of the state, are not always definite and are frequently obscure. This uncertainty and obscurity is pronounced and unfortu-nate.   Some of the enactments bear the evident marks of an attempt to confer the authority on the county authorities and

to so confer it as to make it a legal certainty, though so deftly expressed as to leave the purpose of the legislation in doubt to any but a trained legal mind.   Notwithstanding this apparent fact, the duty is put on the court to construe the act in the light of judicial precedent and the apparent purpose of the legislation, regardless of our judgment of the source or the history of the acts.   As the law stood in 1883, whenever a judgment was rendered against a county, it was to be paid by a tax levied like other county charges, paid into the treasury and turned over to the person to whom the money was adjudged.   There was a proviso in the section which likewise permitted the payment of the judgment by warrant on the county treasury, when there were funds there not otherwise appropriated which could be applied to the purpose.   General Statutes, 1883, sec. 527.

Whether this general right to levy a tax to pay a judgment would be always available is not entirely clear.   Subsequent legislation puts certain restrictions on the county authorities with reference to the amount of taxes which may be levied in any one year.   General Statutes, sec. 2816.

According to this provision, the tax levy for any current year was limited to ten mills on the dollar for ordinary county purposes.   Evidently this might or might not, in any given case, produce a surplus after the payment of any outstanding judgment.   We are not concerned with this possible difficulty. Subsequent acts of the legislature have totally changed this general scheme, and have brought about the result which creates our present difficulty.   In 1887, the legislature passed an act specifically providing for the levy of taxes to pay judgments against counties.   Section 1 of the act reads as follows:

"That section 7, chapter XXIII., of the General Statutes of the state of Colorado, be, and the same is hereby amended so as to read as follows: SEC. 7. When a judgment shall be given and rendered against a county of this state in the name of its board of county commissioners, or against any county officer, in an action prosecuted by or against him in his

official capacity, or name of office, when the judgment is for
money, and is a lawful county charge, no execution shall
issue thereon, but the same may be paid by the levy of a tax
upon the taxable property of said county, and when the tax
shall be collected by the county treasurer, it shall be paid
over, as fast as collected by him, to the judgment creditor,
or his or her assigns, upon the execution and delivery of
proper vouchers therefor; but nothing contained in this sec-
tion shall operate to prevent the county commissioners from
paying all or any part of any such judgment by a warrant,
*drawn by them upon the ordinary county fund in the county
treasury; Provided,* That the power hereby conferred to pay
such judgment by a special levy of such tax, shall be held to
be in addition to the taxing power given and granted to such
board, to levy taxes for other county purposes, but the board
of county commissioners shall levy under this law only such
taxes as they, in their discretion, may deem expedient or
necessary, and all taxes levied by authority of this act shall
not exceed one and one-half per centum on the dollar of
assessed property for any one fiscal year; *And, provided,
further,* That the powers herein given to the board of county
commissioners shall not be construed as requiring said board
to levy any special tax to pay any judgment, unless in its
discretion the said board shall so determine. Any and all
taxes levied to pay the last payment upon, or to pay any
such judgment shall be valid, whether the sum sought
to be raised thereby exceeds the sum due on such judg-
ment, principal and interest or not; but such excess of
the sum required shall not exceed a sum equal to ten per
centum of such required sum, and no sale of real estate made
to make such taxes shall be invalid by reason of such excess,
if the same is within the above specified limit; but all levies
to pay judgments shall be made as near as possible, to raise
a sum equal to that due on the judgment to pay which the
tax is levied; but, nevertheless, any excess levied, if such
excess does not exceed the said ten per centum of the sum
due and desired to be paid, shall not invalidate any tax levy

upon or tax sale of real or personal estate, made to raise, make or collect the said sum due and excess." Session Laws, 1887, page 240.

The grant of authority is plain, definite, broad and complete. Taking the granting clauses by themselves, they give the amplest authority to levy a tax to pay a judgment. There can be no possible dubitation concerning it. The same restriction which was expressed in section 527 of the General Statutes is retained here. The judgment creditor may not issue an execution and levy on the property of the county. The legislature still restricted his relief to the levy of a tax which might be applied to this purpose. The county commissioners are not necessarily limited to the exercise of this power. According to this act, the board can levy a tax, or it may pay the creditor by a warrant drawn on the treasury. This is on the assumption that there is money in the treasury, not otherwise appropriated or disposed of, which the board sees fit to apply to the liquidation of any such claim. There would of necessity be no money in the treasury which could be thus used, unless the restricted levy of ten mills should produce a sum which would exceed the ordinary expenses of the county. This might often happen. Cases might arise where there would be money in the treasury if the board had levied a tax to the full limit of their authority and the proceeds had gone into the county treasury. No such fact exists. The petition avers there was no money in the treasury which could be applied to the payment of the judgment. On demurrer this must be taken to be true, and we thus have a case where there is no money properly applicable to the payment of the judgment in the county treasury, and where the only relief the creditor can obtain is through the exercise of the authority to levy a tax. There is still another consideration arising from a subsequent act of the legislature which is of very great significance, force and import in compelling this court to follow the precedents which will be cited. As has already been stated, up to 1887 the county had the right to levy a ten mills tax for ordinary county purposes, and de-

vote any money in excess of the ordinary county charges to the payment of judgment creditors. This power has been taken away. The county authorities may not now levy a tax which shall equal the sum of ten mills on the dollar, except under certain definite conditions. In 1891, the legislature amended chapter 94 of the Statutes of 1883, and thereby limited the power of the county authorities with respect to the levy of taxes by the following provision:

"Section 5. There shall be levied and assessed * * * for state purposes * * *; for interest and payment on county bonds * * *; for support of schools * * *; for ordinary county revenue such rate as will be sufficient to defray the ordinary county expenses." * * * Session Laws, 1891, page 289. ·

It can therefore never happen that there will be in the county treasury any funds on which a warrant can be drawn to pay the judgment creditor. It must be assumed the board will obey the legislative command and levy only such taxes as shall produce a sum adequate to pay the estimated and probable current operating expenses of the county. The averment that there was no money in the treasury applicable to the payment of this judgment may not only be accepted as true by the admissions of the demurrer, but must be taken to be legally and presumptively true because of this legislation. Under these circumstances the creditor can never be paid unless the county authorities shall levy a tax to satisfy the judgment. It is impossible otherwise to get any funds into the treasury which shall be legally and legitimately applicable to this specific object. That the purpose is a legitimate one must be conceded, because the act of 1887 expressly confers on the board the authority to levy a tax to pay such debts. Considering only the terms in which the authority is granted, and regarding only the fact that the creditor is such by judgment, and therefore entitled in law to his money, everybody would concede the duty to perform was thereby laid on the board. The only possible answer to the decision is derivable from

the proviso contained in the act. That proviso apparently limited the power and left the creditor without the right to compel its exercise because of the discretion conceded to the county authorities. If we should accept this construction, it would create an insurmountable difficulty. The creditor would be at the mercy of the county authorities. He would be entirely dependent on the good faith and the business integrity of those who might happen to constitute the county government. We can easily imagine his situation, if the county was at all embarrassed, either by the extent of its expenditures, or the limit of the debts it had already contracted, and the burden of its current levies. The situation would be heightened and embarrassed by the general desire to escape the burden of taxation. The extravagance of one board, and the contraction of debts which might be put into judgments, would be succeeded by a corresponding economy and an agreed limitation of the levy to the most economical management of the county affairs. The history of municipalities, of county governments, of state affairs, and even of national concerns, permits us to indulge in the presumption that the acceptance of this construction might lead to the wholesale repudiation of the legitimate obligations and debts of counties. This consideration forbids us to accept the construction which the representatives of the county would place on the statute. It lacks honesty of purpose, and we may at least mistrust an intention to repudiate a debt which has been regularly and legally established. We shall accept no such construction on the basis of any such indefinite legislation. Scanning the answer, we might be led to conclude the judgment was not legitimately obtained, and, if the matter had been properly defended by the then constituted county authorities, the debt might not have resulted in a judgment. We are not at liberty, however, on this hearing, or in these proceedings, to indulge in any such inferences, or on the basis of any such presumptions to hesitate to enforce the apparent legal rights of this judgment creditor. In these proceedings the judg-

ment must be accepted as a verity. It cannot be collaterally attacked. It must be assumed to represent an honest debt, regularly contracted, fairly and honestly put into collectible form. *United States v. New Orleans*, 98 U. S. 381; *Wells v. The Town of Mason*, 23 W. Va. 456.

These and many other authorities hold the indebtedness represented by a judgment to be conclusively established by the formal entry. It therefore follows Rollins had a claim which the county could not impeach or attack because of the character of the indebtedness on which it was entered. The ancillary right of enforcement is a legitimate deduction from these facts and this law, providing the discretion which the act attempted to give the authorities is no bar to proceedings by mandamus to compel the levy of the tax.

This question has been so often and so uniformly adjudged in favor of the judgment creditor as to require no argument to demonstrate it, and scarcely the citation of an authority to support it. Ever since the early case of *Supervisors v. United States ex rel.*, 4 Wall. 435, it has been uniformly adjudged words like those contained in this statute do not confer a discretion which permits the board to levy a tax to pay a judgment or to refuse to levy it, as they may deem fit. In all statutes of this description, the word " may " is interpreted to mean " must." The permission is regarded as equivalent to a mandate wherever the public interests or the rights of third persons are concerned. The discretion only exists where there are no third parties, either the public or persons, to be injuriously affected by its exercise. This matter has been settled by a long line of authorities that may be found in all the text-books which treat of this matter. Dillon's Mun. Corp., vol. 1, sec. 98 ; Endlich Intp. of Statutes, sec. 147 ; Sutherland on Statutory Construction, sec. 460, *et seq*.

Following this well established rule, we are compelled to conclude the proviso in the statute does not bar the application, and the judgment creditor, being otherwise remediless, may invoke the power of the court to issue a mandamus to

compel the board to levy the tax requisite to pay his judgment. He was without other adequate remedy, and, under such circumstances, his right to mandamus is well settled.

We are aware of a recent decision in the circuit court of appeals of the eighth circuit (*Board of Commissioners of Grand County v. King*, 67 Fed. Rep. 202) which is opposed to this doctrine. We have read the opinion with a great deal of care, and while we do not concur in its reasoning as applied to the case at bar, and possibly not as applied to the case which was decided, our difference springs mainly from a consideration which evidently was not present to the mind of the eminent judge who wrote the opinion, or to the court which indorsed it. Unless we have attached unusual and unwarranted force to the subsequent legislation, we must conclude the act of 1891 was not called to the court's attention. Our first difference with the distinguished court is with reference to the defect which is pointed out in the pleading. We do not understand the court to put its decision on this ground, or to have reversed the case because the plaintiff failed to allege the cause of action stated in the suit wherein his judgment was recovered. The court simply say they are unable to determine from his pleading whether the judgment was rendered on warrants issued for the general current expenses of the county, and therefore matters as to which the board of county commissioners might have some discretion. The reversal is not put on that basis. Stated as a principle of pleading, we cannot concede its accuracy. The suit is brought on a judgment. The judgment imports verity. According to the decision of the supreme court of the United States, cited *supra*, it cannot be collaterally inquired into. Why a plaintiff who sues on a judgment to compel a board to levy a tax should state the cause of action which has resulted in his judgment is not clear to our apprehension. Since the court did not put its reversal on that ground, we are not compelled to do otherwise than express our want of assent to the proposition. We can quite readily see that there may be a suggestion of legal accuracy in the discussion, and that it may contain the germ

of a defensible legal proposition.  Where we should differ
respects the statement as to the party on whom is properly
cast the burden of the plea.  We think when the statute
provides that a judgment debtor may have a tax levied to
pay his judgment, where no warrant can be issued for its
liquidation, the statute means precisely what it says, and
that there can be no defense to the plaintiff's petition for
a writ founded on his failure to allege that his cause of
action was of one sort, rather than of another.  Where we
concede the truth may lie—concerning which we express no
definite opinion, since the question does not arise in the
present controversy—is in the direction of the defenses
which might be set up.  We should say nothing about it,
only, where we in any wise dissent from so eminent a court,
we are bound to express the reasons for our conviction.  The
statute does in terms purport to give a discretion to the
board of county commissioners to either levy a tax or issue
a warrant.  We have insisted and still insist that their dis-
cretion is a legal one, and that the word "may" means
"must," and the board can be compelled by mandamus to
levy a tax, unless they can assign some legal reason on
which to base their claim of right to the exercise of the dis-
cretion conferred.  We are not prepared to say, if the
county should allege that the plaintiff had gotten his judg-
ment on warrants, which were issued in the discharge of the
current expenses of the county, and that funds would be in
the treasury on the incoming of the taxes collectible by
reason of the current levy, which would be properly appli-
cable to the payment of these claims, this might not be a
good return to an application for such a writ.  This might
be a case where the court would refuse to issue the mandate.
We apprehend, though, it is a matter properly presentable
in the return, and is not the subject-matter of an indispen-
sable allegation in the application.

For similar reasons we are inclined to withhold our assent
to the proposition that, because the discretion may be exer-
cised in either one of two ways,—either by the levy of a tax,

or the issuance of a warrant,—the trial court is without the right to issue a writ to compel its exercise in the only way which will serve to protect the interests of the petitioner. If the doctrine stated in the *King Case* were carried to its legitimate conclusion, the courts could never compel a board to levy a tax to pay a judgment. A discretion is given by the statute. That discretion is to levy a tax or issue a warrant. If the discretion is adjudged to be sufficiently broad to permit the board to levy a tax, or to refuse to levy it, and pay the judgment by a warrant drawn on a treasury in which there are no funds applicable to its payment, and to which, according to the allegations of the petitioner and under the statute of 1891, no money can ever come which can be used for that purpose, a discretion will be conceded which has been condemned by all the courts which have considered this subject. It is certainly a very pronounced example of what has been condemned as contrary to good morals. It was once inquired, " What man is there of you, whom, if his son ask bread, will he give him a stone ? " Matt. vii. 9. Under circumstances like the present, and following this decision, the judgment creditor would most certainly get a stone. It would create the never ending circle. The creditor reduces a legitimate claim to judgment. On the demand to pay the debt, or levy a tax, the board refuses to make the levy, but issues a warrant which cannot be paid. When this warrant is put into judgment, a like result ensues. A task would thus be laid on the creditor incomparably more easy and pleasant than the punishment imposed by the gods on Sisyphus.

We therefore conclude there is by the statute, in the absence of the suggested defense, or any other equally available one, no such discretion vested in the board as will, as a matter of law, defeat the petitioner's right to the peremptory mandate.

The objection based on the character of the demand we do not regard as well taken. The code provides for the issuance of the writ, and prescribes the general form and

character of the petition and the proceedings which may be had and taken under it.   This, with the accepted course of such proceedings in states where there are no statutory regulations, lead us to conclude there is no necessity for greater accuracy in the statement of the petitioner's claim than would suffice as a statement of a cause of action in an ordinary pleading.   In other words, a petition for a mandamus is to be construed in the same way and subject to the general rules applied in the construction of an ordinary complaint.   The certainty to a certain intent in every particular is no longer a prerequisite.   Substantial accuracy is all that is necessary. Tested by these rules, the petition was ample and the writ should go.   The form of the demand was enough to initiate the right when the board refused to act in the premises. Their refusal was couched in such broad and general terms of denial as to amount both to a refusal of payment and a refusal to levy any tax to liquidate the debt.   Since the board did this, the law does not require any other or further demand, for the breadth of the denial will make up for any narrowness in the request, and the two together must be taken as sufficient to entitle the plaintiff to file his application.

We therefore hold the court erred in sustaining the demurrer and dismissing the plaintiff's proceedings.   The judgment will accordingly be reversed and remanded for further proceedings in conformity with this opinion.

*Reversed.*